Odis Donell THOMAS *v.* STATE of Arkansas

CR 85-195                                        709 S.W.2d 83

Supreme Court of Arkansas
Opinion delivered May 19, 1986

*Youngdahl, Youngdahl & Wright, P.A.*, by: *Thomas A. McGowan*, for appellant.

*Steve Clark*, Att'y Gen., by: *Connie Griffin*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. This prosecution for rape has now been in the state and federal courts for more than six years. On November 27, 1979, the prosecutrix reported to the police in Monticello, in Drew County, that she had been raped that morning. The police suggested that she and her husband ride around in the vicinity of the washateria where the attack occurred and look for the man. They did so. The next day the prosecutrix recognized the appellant, who was in a yard working on his car.

Thomas was arrested and charged with rape. At first he pleaded not guilty, but then he changed his plea to guilty in return for a negotiated 30-year sentence. After that he filed a Rule 37 petition asking to withdraw his plea of guilty, for ineffective assistance of counsel. In that proceeding we affirmed the trial court's denial of the petition. *Thomas v. State*, 277 Ark. 74, 639 S.W.2d 353 (1982). Thomas then sought relief in the federal courts, on the same ground. The district court's judgment setting aside the conviction was upheld by the court of appeals. *Thomas v. Lockhart*, 569 F.Supp. 454 (E.D. Ark. 1983), affirmed, 738 F.2d 304 (8th Cir. 1984).

The State elected to retry the case. The trial court granted a defense motion for a change of venue. The case was tried in Ashley County. The jury found Thomas guilty and sentenced him to life imprisonment. Upon this appeal from the ensuing judgment four arguments for reversal are submitted.

It is first argued that the court should have granted defense counsel a continuance to enable him to investigate the make-up of the jury panel. The defendant Thomas is black. Before the selection of the jury began, defense counsel looked at the jurors

and moved to quash the panel on the ground that it appeared to be 80% white; he said that the ratio of only 20% black was not a fair representation of the black population in the county. The court overruled the motion, because no supporting proof was offered. Counsel then asked for a continuance to enable him to investigate the matter. That request was also denied.

No basis for a continuance was shown. There was no offer of proof, the motion being supported only by counsel's observation of the assembled jurors. Counsel objected only to the make-up of "that panel," because it appeared to be 20% black. There was no assertion of systematic exclusion of blacks from the jury, nor any suggestion by counsel that he wanted to investigate the possibility of systematic exclusion.

Our statutes now provide for the random selection of prospective jurors from the current list of registered voters. The procedure is set forth in detail in Ark. Stat. Ann. § 39-205.1 (Supp. 1985). The lists do not show the voter's race. If the law is followed, as we must assume, there is no possibility of an intentional exclusion of blacks from jury panels. Counsel did not seek to investigate such a possibility. Instead, he requested an opportunity to show that the particular panel was not representative of the population. That showing, however, would not have supported the motion to quash the panel, for when the panel is drawn by chance a showing that its racial make-up does not correspond to that of the county does not in itself make a prima facie case of racial discrimination. *Turner* v. *State*, 258 Ark. 425, 527 S.W.2d 580 (1975). The requested continuance was properly refused.

A second argument is that the court should have suppressed Thomas's statement, which had been taken down by an interrogating officer and signed by Thomas. The police had already interviewed the prosecutrix when she reported the rape. She said, and later testified, that she had been in a washateria doing her laundry at about ten o'clock in the morning. A black man, whom she later identified as Thomas, came in and asked about how he could obtain drugs. She did not know. She had just drunk a Coke. The man offered to take the empty bottle back to the dispenser, which he did. When he came back inside, he walked over to her and asked if she had any children. She said she had one child. He

then grabbed her and forced her to the floor despite her screams and attempts to escape. He pulled a knife, held it to her throat, and made her take off her pants. At that point she blacked out for about five minutes. When she regained consciousness, Thomas was having sexual intercourse with her. When he finished, he threatened to kill her if she told anyone, and left. After waiting a few minutes the prosecutrix went to her mother-in-law's home and called the police.

Thomas was questioned on the following afternoon. At first he denied having been at the washateria or knowing anything about the matter. The officer then said that Thomas wouldn't have to worry about it if he hadn't been there, for they had a Coke bottle the perpetrator had had, and his fingerprints would be on it. Thomas became apprehensive and said he forgot about the Coke bottle. He admitted having been at the washateria and gave an account of the initial conversation similar to that the prosecutrix had given. Thomas said he had shown her the knife, but they had started holding hands, and she cooperated in the act of intercourse.

At the suppression hearing Thomas repudiated the incriminating parts of his statement. In his testimony he corroborated the statement's detailed account of how he had gone to work at seven that morning, had quit his job, and had stopped at several specified places before going to the bathroom at the washateria. He denied ever having seen the prosecutrix at all. He corroborated the statement's description of the route he took in walking home from the washateria.

Thomas testified that he had signed three statements during the interrogation, but the police had torn up the first two. He said the incriminating portion was not in the third statement when he signed it, though he admitted his signature. In effect he charged the officers had altered the statement either after he signed it or without his knowledge before he signed it.

Upon the totality of the proof we find that the trial court was right in holding the statement to be voluntary. The trial judge evidently concluded, as the jury must also have concluded, that Thomas had tailored his testimony to admit all the facts recited in the statement that were susceptible of being proved by third persons, but to deny what had happened during the compara-

tively short time when he and the prosecutrix were alone together. We hold that the written statement was properly received in evidence.

A third argument is that the State's proof was insufficient to support the conviction for rape. Overall, the prosecution presented a very strong case. The prosecutrix's identification was positive, the crime having taken place in broad daylight. She was able, by cruising the neighborhood, to find her assailant and point him out to the police the very next day. A search of Thomas's home, to which he consented, yielded clothing, a distinctive cap, and a knife, all similar to what the prosecutrix had described. Thomas's own written statement described an act of sexual intercourse at the time and place fixed by the prosecuting witness.

■ In questioning the sufficiency of the evidence the appellant argues that the State failed to prove the required element of force, in that the prosecutrix blacked out and did not regain consciousness until the act of intercourse was in progress. The young woman, however, had already resisted to the extent of her ability. Her lapse into unconsciousness cannot be said to have amounted to consent.

Lastly, it is insisted that the court should not have permitted the prosecutrix to testify about the effect the event had had upon her marriage. The testimony that is objected to was brought out by the State's attorney after the prosecutrix said that her marriage had been affected. The record continues:

> Q. In what manner?
>
> A. My husband had got to where he started beating on me. He couldn't stand to be around me half the time.
>
> Q. Did he get over what had happened to you?
>
> A. No, sir.

We agree that the trial judge should have excluded the quoted testimony. It doubtless had some slight relevancy, as the State argues, but we think its probative value was clearly outweighed by its possible prejudicial effect upon the jury.

■ Even so, we are not willing to order a new trial on the basis of the brief excerpt we have quoted. That excerpt comprises four typewritten lines in a record that exceeds 550 pages. The prosecutor made no effort to magnify the point in the eyes of the jury. To the contrary, his closing arguments are in the record; he did not mention the matter now in issue. We have followed the Supreme Court's lead in adopting the view that when the evidence of guilt is overwhelming, an error even of constitutional proportions may be found to be harmless beyond a reasonable doubt. *Pace v. State*, 265 Ark. 712, 580 S.W.2d 689 (1979). Here no constitutional issue is presented; the issue is one of judgment. The State's proof was so strong, especially when presented more than five years after the crime was committed, that we are convinced that the cause of justice would not be served by the granting of a new trial.

We have reviewed the case with care and find no reversible error in the points that are argued or in any of the other objections presented in the court below.

Affirmed.

PURTLE, J., not participating.