Royse Nathaniel SANDERS, Jr. *v.* STATE of Arkansas

CR 89-59                                                    776 S.W.2d 334

Supreme Court of Arkansas
Opinion delivered September 18, 1989

26

*Daniel D. Becker*, Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Lynley Arnett*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. This is an appeal from the appellant's conviction of robbery and being a felon in possession of a firearm. He received a sentence of fifty-five years. The sole issue on appeal is whether the trial court erred in denying the appellant's objection that the jury panel had no black members. We find no error.

The appellant, a black male, was convicted of robbing a

white man. At trial, he asserted that the jury panel in Garland County, from which the appellant's jury was picked, did not contain any black members. Appellant objected to the panel alleging that it would be highly prejudicial to have an all white jury. The trial court denied his challenge to the jury panel and entered an order stating how the jury panel had been selected. According to that order, the jury panel was selected by the use of a computer using random numbers to select names of qualified voters of Garland County. A master list of 2,065 names of qualified voters was prepared by computer. From that list, or the jury wheel, the court drew four hundred names to serve as jurors for the July 1988 term of court. There were four panels with one hundred jurors each. The members of the appellant's jury were randomly selected from three of the four panels.

The selection of a petit jury from a representative cross section of the community is an essential component of the sixth amendment right to a jury trial. *Taylor* v. *Louisiana*, 419 U.S. 521 (1975). But, there is no requirement that the petit jury actually chosen must mirror the community and reflect the various distinctive groups in the population. *Id., see also Mitchell* v. *State*, 299 Ark. 566, 776 S.W.2d 332 (1989). A defendant in a criminal case is entitled to require that the state not deliberately or systematically deny to members of his race the right to participate, as jurors, in the administration of justice. *See, e.g., Waters* v. *State*, 271 Ark. 33, 607 S.W.2d 336 (1980). It is the state's purposeful or deliberate denial to blacks, on account of race, of participation in the administration of justice by selection for jury service that violates the equal protection clause. *Id.*

In order to establish a prima facie violation of the fair-cross-section requirement, the appellant must show that (1) the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren* v. *Missouri*, 439 U.S. 357 (1979). Once the appellant makes a prima facie showing of racial discrimination in the jury selection process, the burden shifts to the state to justify its procedure.

■ Here, the appellant clearly did not meet his burden of proof. The record is void of any statistical information to show the racial make-up of the community or of the 400 jurors on the four jury panels. *See Thomas* v. *State*, 289 Ark. 72, 709 S.W.2d 83 (1986). In addition, the record neither reflects that the appellant ever asserted below that there was a systematic exclusion of blacks from the jury nor indicates he wanted to investigate that such an exclusion occurred. *Id.*

■ From our review of the record, there is a lack of proof as to the racial make-up of the community and the jury panels, and in addition, there is simply no showing that the underrepresentation of blacks in the appellant's jury panel is due to systematic exclusion in the jury selection process. As stated earlier, a computer was used to randomly pick jurors from a current list of registered voters, which did not show the voter's race. In this regard, Garland County's jury selection process met the conditions set out in Ark. Code Ann. § 16-32-103 to -105 (1987). As we have previously held, when the jury selection law is followed — and it was here — there is no possibility of intentional exclusion of blacks from jury panels. *Thomas*, 289 Ark. at 74, 709 S.W.2d at 84.

For the reasons above, we affirm.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I concur only because I do not have time to research this issue in depth. There is something seriously amiss in the jury selection process when not one black person out of a panel of 300 prospective jurors is chosen. Clearly, a prima facie case of discrimination is established under these circumstances. The state should be charged with proving the validity of the panel. We have been furnished no figures reflecting the number of blacks residing in Garland County, although such figures are available from the Census Bureau and other compilations.

I am aware of the opinion of this court in *Thomas* v. *State*, 289 Ark. 72, 709 S.W.2d 83 (1986), and various United States Supreme Court opinions including *Duren* v. *Missouri*, 439 U.S. 357 (1979). Blacks are a distinctive group and are not represented at all on this panel of 300 venires. The state should be

required to show some reason for the absence of this distinctive group. A list of all licensed drivers in the county might be more representative than the voter registration list. People who pay personal and real property taxes are listed in each county and could be a source from which jurors are selected. Any system obtaining the result in this case certainly needs further examination.