Chon Lenell JOHNSON *v.* STATE of Arkansas

CR 00-756                                          37 S.W.3d 191

Supreme Court of Arkansas
Opinion delivered January 18, 2001

*William R. Simpson, Jr.*, Public Defender; *Andy O. Shaw*, Deputy Public Defender, by: *Deborah R. Sallings*, Deputy Public Defender, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. ■ Appellant Chon Lenell Johnson appeals the order of the Pulaski County Circuit Court convicting him of disorderly conduct. For reversal, Appellant argues that there was insufficient evidence to support his conviction. The Arkansas Court of Appeals affirmed his conviction in *Johnson v. State*, 70 Ark. App. 343, 19 S.W.3d 66 (2000). We granted Appellant's petition for review of that decision, hence our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(e). When we grant review following a decision by the court of appeals, we review the case as though it had been originally filed with this court. *Fowler v. State*, 339 Ark. 207, 5 S.W.3d 10 (1999), *cert. denied*, 120 S. Ct. 1558 (2000); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). We find no error and affirm.

The record reflects that on the evening of May 1, 1998, Jacksonville Police Officer Mark Swagerty approached Appellant while he was standing on the corner of Ray Road. According to Swagerty, he became suspicious after Appellant began pacing and acting nervous, combined with the fact that it was 11:30 p.m. in a high-crime neighborhood. Swagerty testified that he exited his patrol unit and asked Appellant his name. Appellant responded, "Why are you fucking harassing me?" Based on Appellant's cursing and violent demeanor, Swagerty decided to call for backup.

Several officers, including Officer Thomas Mayberry, responded to the scene. According to Mayberry, when he arrived, Appellant was flailing his arms around, yelling, and cursing. Mayberry stated that he had had previous contacts with Appellant as a police officer. Mayberry attempted to calm him down. Mayberry testified that Appellant told him that he was on the corner waiting for a taxi that he had called. Mayberry attempted to verify Appellant's claim about the cab, and during this time, Appellant alternately calmed down and then became agitated again. At one point, Mayberry witnessed Appellant exhibit a violent demeanor toward Swagerty by clenching his fists and pulling off his shirt. Mayberry stated that he interpreted these actions as "presassaultive cues."

The situation between Appellant and the police escalated after Appellant began walking toward a nearby carport. Mayberry asked him to return to the street, but Appellant remained in the carport area. Then, according to Mayberry, Appellant began to sprint across the front porch area. Concerned that Appellant would try to force his way into the residence, the officers pursued him, and Mayberry administered a burst of pepper spray to his face. Appellant continued across the porch and wrapped himself around a wrought iron post on the front porch. Mayberry testified that after being unable to pull his arms loose from the post, he and another officer began to strike Appellant in the fleshy-tissue area of his forearms with their batons. After the officers removed Appellant from the post, they placed him on the ground, handcuffed him, and placed him under arrest. At some point during this conflict, the residents of the home stepped outside to determine the cause of the commotion. They identified themselves as Appellant's aunt and uncle.

Appellant was charged with the misdemeanor offenses of terroristic threatening in the second degree; resisting arrest; fleeing; disorderly conduct; and public intoxication. He was convicted on all counts in Jacksonville Municipal Court on November 13, 1998. He appealed his convictions to the Pulaski County Circuit Court and waived his right to a jury trial. A bench trial was held on June 18, 1999, and the trial court ultimately found Appellant not guilty on the charges of terroristic threatening, fleeing, and public intoxication. With regard to the charge of resisting arrest, the trial court found Appellant guilty of the lesser offense of failure to submit to arrest. Finally, the court found Appellant guilty of disorderly conduct. The trial court imposed a ninety-day suspended sentence and a $200 fine for the charge of failure to submit to arrest. Appellant was then given a thirty-day suspended sentence and fined $100 on the disorderly conduct charge, with the sentences to be served consecutively. Appellant now appeals only the disorderly conduct conviction.

■■ Appellant's sole point on appeal is that there was insufficient evidence to support his conviction for disorderly conduct. He makes no challenge to the legality of the police's initial encounter. When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *Dodson v. State*, 341 Ark. 41, 14 S.W.3d 489 (2000); *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998). Substantial evidence is that which is

of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resort to speculation or conjecture. *Id.*

Appellant argues that his words and conduct directed at the police officers did not rise to the level of "fighting words" as required for a conviction under Ark. Code Ann. § 5-71-207(a)(3) (Repl. 1997). He relies on the case of *Houston v. Hill*, 482 U.S. 451 (1987), for the proposition that the First Amendment protects a significant amount of verbal criticism and challenge directed at the police. The *Hill* case is inapplicable to the situation now before this court, however. There, the United States Supreme Court ruled that a city ordinance making it a crime for a person to "oppose, molest, abuse or interrupt any policeman in the execution of his duty" was unconstitutionally overbroad. *Id.* at 461.

■ This court distinguished the law struck down in *Hill* from the proscription set forth in subsection (a)(3), because the Arkansas statute proscribes only "fighting words." *Bailey v. State*, 334 Ark. 43, 53, 972 S.W.2d 239, 244 (1998). At issue in *Bailey* was whether section 5-71-207 was overbroad, and thus unconstitutional. In upholding the constitutionality of the statute, this court acknowledged that subsection (a)(3) proscribes only "fighting words" in compliance with the United States Supreme Court ruling in *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). In *Chaplinsky*, the test for determining whether language falls within this proscription is "what men of common intelligence would understand would be words likely to cause an average addressee to fight." *Id.* at 573.

Here, Appellant argues that his statement "Why are you fucking harassing me?" did not rise to the level of fighting words. Section 5-71-207(a)(3) states in relevant part that a person commits the offense of disorderly conduct if he:

> In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response[.]

Both Officers Swagerty and Mayberry testified that Appellant was using profane language. It is true that the mere use of that language is not a sufficient basis for convicting Appellant of the crime of disorderly conduct. However, considering his language in conjunc-

tion with the totality of his actions, we believe there was sufficient evidence to uphold his conviction.

■ First, Appellant was not calmly standing around and uttering profane language. Instead, the evidence indicates that he was alternating between states of calm and irrationality. During those periods of irrationality, he was flailing his arms about, cursing loudly, and eventually demonstrating a violent demeanor toward Swagerty. Another important consideration is the fact that Mayberry knew Appellant and was aware of his past charge of assaulting a police officer. We cannot ignore the fact that the police officers were dealing with a person who had previously assaulted another officer and was now cursing them. Viewing the evidence in a light most favorable to the State, we cannot say that the trial court erred in finding sufficient evidence that Appellant used obscene language in a manner likely to provoke a violent or disorderly response. Accordingly, Appellant's argument that there was insufficient evidence to support his conviction is without merit.

Finally, we note that Appellant's conviction for disorderly conduct could be affirmed by reviewing the evidence under section 5-71-207(a)(1) or (2). Appellant contends that his conviction was based solely on the fact that he cursed, and thus review must be limited to whether there was sufficient evidence to satisfy the elements of only subsection (a)(3). This argument is without merit. Nothing in the record reflects that Appellant's conviction was based solely on the evidence related to his use of obscene language. The order simply reflects that Appellant was convicted of disorderly conduct, pursuant to section 5-71-207. Moreover, the trial court, in finding Appellant guilty of disorderly conduct, stated in relevant part: "I don't believe at that point in time he has the right to cuss the police officer, and it kind of escalated down from there." This language indicates that the trial court considered all the evidence presented in deciding Appellant's guilt on the disorderly conduct charge.

■ In addition, this court is not constrained by the trial court's rationale but may go to the record for additional reasons to affirm. *Heagerty v. State*, 335 Ark. 520, 983 S.W.2d 908 (1998); *Haynes v. State*, 314 Ark. 354, 862 S.W.2d 275 (1993). Moreover, in *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996), this court held that where a record was vague as to which subsection a defendant was convicted of violating, there was no error committed

because the subsections were merely different ways of proving a single violation. In the present action, there is only one crime of disorderly conduct, but several different ways of committing it.

■ Section 5-71-207(a)(1) provides that a person commits the crime of disorderly conduct when he engages in violent, threatening, or tumultuous behavior. Subsection (a)(2) provides that a person commits disorderly conduct when he makes unreasonable or excessive noise. Again, the evidence of Appellant's erratic behavior, cursing, flailing his arms, and his demeanor toward Swagerty is sufficient to support a finding of guilt under either of these subsections. Accordingly, we affirm Appellant's conviction for disorderly conduct.

BROWN and IMBER, JJ., concur.

HANNAH, J., not participating.

ROBERT L. BROWN, Justice, concurring. I concur with the affirmance because I agree with the State that Johnson was guilty of disorderly conduct by engaging in threatening behavior. *See* Ark. Code Ann. § 5-71-207(a)(1) (Repl. 1997). I further agree with the State that the record does not reflect that Johnson was charged with a specific subsection of the Disorderly Conduct statute. Moreover, Johnson appears to contest his disorderly conduct conviction generally without directing his attack at any specific subsection. Thus, I conclude that if substantial evidence supports a violation of any subsection of § 5-71-207, affirmance is required.

My problem with the majority opinion is that it concludes that substantial evidence was presented to support three categories of disorderly conduct. I disagree. The pertinent sections of § 5-71-207(a) read:

(a) A person commits the offense of disorderly conduct if, with the purpose to cause public inconvenience, annoyance, or alarm or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent, threatening, or tumultuous behavior; or

(2) Makes unreasonable or excessive noise; or

(3) In a public place, uses abusive or obscene language, or makes an obscene gesture, in a manner likely to provoke a violent or disorderly response; or

With regard to subsection 2, there was testimony by Officer Mark Swagerty that Johnson was "cursing out loud in the street," and Officer Thomas Mayberry confirmed that Johnson was yelling and cursing. But neither witness described the words used or the extent of the noise so as to bring into play disorderly conduct under § 5-71-207(a)(2).

In addition, though Johnson was clearly cursing, there was no evidence that the cursing was "in a manner likely to provoke a violent or disorderly response," as required by § 5-71-207(a)(3). This case is categorically different from *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998), where the repeated cursing and racial slurs were highly antagonistic and clearly directed at the police officers. I concluded in that case that Bailey's language was beyond the pale and constituted fighting words even for police officers who, as trained professionals, are expected to exercise a higher degree of restraint in the face of abusive language than the average citizen. *Id.* See also *City of Houston v. Hill*, 482 U.S. 451 (1987); *Lewis v. City of New Orleans*, 415 U.S. 130 (1974) (Powell, J., concurring). In the instant case, the only curse words repeated to the trial court by the police officers was the original question posed by Johnson and directed to Officer Swagerty: "Why are you fucking harassing me?" That is not enough to warrant a § 5-71-207(a)(3) violation in my judgment.

Accordingly, I would limit the basis for the conviction to Johnson's threatening actions. Under that approach, discussions of § 5-71-207(a)(2) and (3) violations would be unnecessary. This would have the additional salutary effect of removing inherent and troublesome First Amendment issues from this case that might come back to haunt this court in future cases.

For these reasons, I concur.

IMBER, J., joins.