Paul E. HANLIN *v.* STATE of Arkansas

CR 03-344 157 S.W.3d 181

Supreme Court of Arkansas
Opinion delivered April 1, 2004

518

*The Lisk Firm*, by: *Lynn D. Lisk*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brent P. Gasper*, Ass't Att'y Gen., for appellee.

Robert L. Brown, Justice. Appellant Paul E. Hanlin appeals his judgment of conviction for rape and his sentence of twenty-two years in prison as well as the denial of his motion for a new trial. He argues the following points on appeal: (1) the evidence was insufficient to support the verdict; (2) the circuit judge abused his discretion in admitting hearsay statements that Hanlin was accused of another rape in another state; and (3) the circuit judge abused his discretion in refusing to allow Hanlin to delve into the victim's sexual history, when the prosecutor was permitted to do so. We reverse and remand this case for further proceedings.

The facts in this matter were developed at trial. Delvin Hanlin, brother of Paul Hanlin, testified that his daughter, L. H., was the rape victim. Kathy Hanlin is Delvin Hanlin's wife and the

mother of L. H. Paul Hanlin lived off-and-on with Delvin Hanlin and his family from April 1997 until May 2000. In October 1997, they were all living in a trailer park in the outskirts of Jacksonville. During the evening of October 12, 1997, Delvin and his wife left their trailer home to celebrate their birthdays, and Paul Hanlin (hereinafter referred to as Hanlin) remained with the two children. At the time, L. H. was twelve years old, and her brother was ten years old.

L. H. testified that Hanlin sent her brother to bed early and offered her "some beer and some weed." She said that the beer and the marijuana made her feel "kind of funny." She related to the jury that Hanlin took her inside the trailer home, made her lie on the couch, and then "got on top of" her. He took off her pants, pulled down his pants to his kneecaps, and "inserted his penis inside" her. L. H. testified that she tried to "push him off" of her, but he "kept saying please repeatedly." After the rape, she went straight to her room, and her mother and father returned around 10:30 or 11:00 that night. The following day, L. H. told her younger brother what had happened, but she did not tell her parents, because Hanlin had told her that he would hurt her family if she did so.

On February 14, 1998, D. B., a friend of L. H.'s, told L. H. that her step-father had raped her. L. H., in turn, told D. B. that Hanlin had raped her. D. B. told L. H. that "it'd be okay and that she needed to tell her mother or her dad." L. H. testified that Hanlin raped her a second time sometime after October 1997 in the same trailer home.

Hanlin later moved to Alabama with his girlfriend Maggie McDaniel and her three children. In 1998, he told S. M., Maggie's daughter, who is three months older than L. H., that he had had sexual intercourse with L. H. On December 31, 1998, or January 1, 1999, S. M. told her mother, Maggie, about the rape of L. H., and Maggie called her sister in Arkansas, Debbie Stringfellow. Late in the evening on May 7, 2000, Debbie Stringfellow and her husband approached Kathy Hanlin with the news that Hanlin had raped L. H. The next morning, Kathy Hanlin took L. H. to a private park, and in response to her mother's questioning about whether anyone had ever hurt her, L. H. answered that Hanlin had raped her. Kathy Hanlin and L. H. then went to a friend's house to call Delvin Hanlin and the Jacksonville Police Department to file a report.

On May 9, 2000, Kathy Hanlin and L. H. met with Officer Barry Davidson, a patrolman with the Jacksonville Police Department. Officer Davidson's report included the fact that L. H. had said Hanlin gave her two beers but did not state that L. H. had said Hanlin gave her marijuana. Detective Jackie Harper of the Jacksonville Police Department also interviewed L. H. and her parents as well as Maggie McDaniel and her daughter, S. M., in Alabama by telephone. Detective Harper received the written statements of Maggie McDaniel and S. M., which were prepared by Alabama authorities.

That same day, Officer Davidson conducted a "traffic stop" on Hanlin who had a traffic warrant outstanding against him for non-payment of fines. Officer Davidson read Hanlin his rights and told him that he was being investigated for rape. Hanlin denied the rape allegations, and Officer Davidson told him not to return to his brother's house.[1]

On May 12, 2000, Dr. Jerry Jones, a child-abuse specialist with Arkansas Children's Hospital, examined L. H. She was fourteen-years-old at the time. He performed a genital and anal examination using a colposcope and testified that the anal exam and external genital exam were normal. However, he stated that L. H.'s hymen had a "deep notch" in an area "that is commonly injured when a child has been sexually abused." According to Dr. Jones, the notch was not fresh and had healed "the best it could." Dr. Jones further testified that L. H. had started her menses when she was thirteen-years-old and that a tampon possibly could have caused the tear and resulting notch. He said that possibility, however, was "quite low because this would have been extremely painful." Dr. Jones wrote on his chart following his examination of L. H. that this finding was "highly suspicious" of an object "having passed between the labia, the lips on the outside, into the genital cleft and striking the hymen and injuring it."

On May 13, 2000, Detective Harper talked with Hanlin, who provided her with his address and telephone number. Detective Harper set a meeting date with Hanlin for additional questioning for either May 16 or May 19, 2000. Hanlin failed to attend the meeting. Detective Harper was unable to reach him, and on

---

[1] Hanlin apparently was arrested and placed in jail for nonpayment of traffic fines. The record is silent on the conditions of his release from jail.

September 27, 2000, an arrest warrant was issued for the rape of L. H. On April 17, 2002, Hanlin was arrested and he was subsequently charged with rape.

Prior to commencement of the jury trial on October 15, 2002, the circuit judge ruled that defense counsel would not be allowed to ask about L. H.'s sexual history after the physical examination by Dr. Jones in May 2000 and that the prosecutor would not be allowed to discuss any criminal allegations about the rape of another girl in Alabama.

As part of the State's case, L. H. described the events surrounding the rape in question. She testified that she had never had any sexual contact with anybody before the night that Hanlin raped her, and she agreed that nobody had done anything like that to her before. She added that she had no sexual contact with anybody between October 1997, when Hanlin raped her, and May 2000, when Dr. Jones examined her. She added that she was still a virgin when Hanlin raped her but that she had had "consensual" sex on her sixteenth birthday. A motion for directed verdict on insufficiency of the evidence was made by defense counsel and denied.

Before defense counsel began Hanlin's case-in-chief, he asked the circuit judge whether he could explore L. H.'s sexual abuse in Texas in 1995, because the prosecutor had opened the door to this line of questioning by Dr. Jones's testimony and by L. H.'s testimony that she had never had sexual contact with anybody before October 1997. The circuit judge denied the motion and said that such evidence would violate the rape-shield law.

The defense called Detective Jackie Harper as its first witness. Detective Harper testified that L. H. never said anything about Hanlin's giving her marijuana but that L. H. knew he had penetrated her with his penis. Detective Harper also testified that she had learned from the statements of S. M. and Maggie McDaniel, which were prepared in Alabama, that Hanlin told S. M. that he engaged in sexual intercourse with L. H. The court initially ruled that Hanlin had opened the door to inquiry about everything in S. M.'s statement, even though Hanlin's counsel argued that he was merely trying to establish how Delvin and Kathy Hanlin received the news about L. H.'s rape in January 1999.

Later, when the prosecution was cross-examining Detective Harper, defense counsel objected to the prosecutor's questions about S. M.'s statement and Hanlin's raping her in Alabama. The

circuit judge advised the prosecutor: "Leave it alone right there." He sustained defense counsel's objection for "anything further."

On redirect examination, defense counsel posed a question to Detective Harper that dealt with how S. M. told her mother about the rape of L. H. and how her mother told Debbie Stringfellow in Arkansas, who, in turn, told Kathy Hanlin. In the course of framing that question, defense counsel said that S. M. had talked to her mother in December 1998 "and told her some things." Before recross-examination, the prosecutor moved again that defense counsel had opened the door to explore S. M.'s rape in Alabama, and defense counsel objected. The circuit judge allowed the prosecutor to do so but said, "I think you're making reversible error," and added, "[d]o what you want to do, at your peril."

The prosecutor then had Detective Harper testify on recross-examination that, according to S. M.'s written statement given to Alabama police officers, on December 24, 1998, Maggie McDaniel had gone to work and left S. M., her sister, and her brother with Hanlin. Her brother and sister had gone to bed, but S. M. and Hanlin were watching television in Maggie's bedroom. Hanlin was smoking and drinking and began rubbing S. M.'s shoulders and breast. S. M. moved away, but Hanlin told her to return and lie down. He touched S. M.'s breasts again, inserted his fingers into her vagina, and put his mouth on her vagina. He asked S. M. if she wanted him to put his penis inside her vagina, she said yes, and he did. Following the testimony, defense counsel moved that this testimony be struck and the jury be admonished that it could not consider the testimony in assessing Hanlin's guilt. The circuit judge ruled as follows: "Well you've gotten in hearsay on hearsay on hearsay on hearsay and I think she's just made reversible error, but that's her call, so I'm not going to do it."

Hanlin took the stand and denied ever having sex with L. H. or doing anything sexual with her. He said L. H. had been "touched" by a friend of her parents when they lived in Texas, and Delvin and Kathy Hanlin told Hanlin not even to hug L. H. The prosecutor immediately objected and defense counsel said he would not pursue that line of questioning.

The circuit judge denied Hanlin's renewed motion for directed verdict at the close of all the evidence. The judge also denied defense counsel's mistrial motion based on the admission of the hearsay statement about the rape of S. M. in Alabama.

The jury found Hanlin guilty of rape and sentenced him to twenty-two years in prison. His subsequent motion for a new trial based on errors related to the hearsay testimony about the Alabama rape and the alleged sexual abuse of L. H. in 1995 in Texas was denied.

## I. Insufficiency of the Evidence

Hanlin first argues that there was insufficient evidence to support the verdict. He claims that he moved for a directed verdict at the close of the State's case and again at the close of all the evidence, in compliance with Ark. R. Crim. P. 33.1(a). He challenges the evidence that was presented by L. H.'s testimony, because he says that it was inconsistent with what she told police officers, friends, and family. He also challenges the circumstantial physical evidence suggestive of abuse and the hearsay statement regarding S. M.'s rape.

The standard of review for a challenge to the sufficiency of the evidence was recently set out in *Sera v. State*, 341 Ark. 415, 434, 17 S.W.3d 61, 73, *cert. denied*, 531 U.S. 998 (2000):

> The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. On appeal, we will review the evidence in the light most favorable to the appellee and sustain the conviction if there is any substantial evidence to support the verdict. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. Only evidence supporting the verdict will be considered.

Due to double-jeopardy considerations, this court reviews the issue of sufficiency of the evidence prior to other issues raised on appeal. *See, e.g., Jones v. State*, 349 Ark. 331, 78 S.W.3d 104 (2002). This court has made it perfectly clear that evidence from a witness who testifies to what he or she saw, heard, or experienced is direct evidence. *See Mills v. State*, 351 Ark. 523, 95 S.W.3d 796 (2003). With regard to a rape conviction, the testimony of a rape victim, standing by itself, constitutes sufficient evidence to support a conviction. *Id. See also Laughlin v. State*, 316 Ark. 489, 872 S.W.2d 848 (1994).

In the instant case, the victim, L. H., testified to what occurred and identified Hanlin as the person who raped her. Dr. Jones testified that L. H.'s hymen had an injury consistent with

sexual abuse. There was also evidence presented that Hanlin fled the jurisdiction after being notified of a meeting with Detective Harper to discuss the alleged rape. Flight is probative evidence of guilt. *See, e.g., Howard v. State*, 348 Ark. 471, 79 S.W.3d 273, *cert. denied*, 537 U.S. 1051 (2002); *Marshall v. State*, 342 Ark. 172, 27 S.W.3d 392 (2000). The evidence was clearly sufficient to support the rape conviction.

## II. Hearsay Evidence Involving S. M.

Hanlin argues that the circuit court abused its discretion by admitting hearsay evidence, over his objection, that he had raped S. M. in Alabama. He points out that even the circuit judge stated that he believed admitting the statement regarding S. M.'s rape was reversible error and that the judge had previously ruled on motions in limine that the statement was hearsay and inadmissible.

Our standard of review on matters relating to the admissibility of evidence was set out in *Harmon v. State*, 340 Ark. 18, 30–31, 8 S.W.3d 472, 480 (2000):

> This court has repeatedly recognized that matters pertaining to the admissibility of evidence are left to the sound discretion of the trial court, and we will not reverse such a ruling absent an abuse of that discretion. *See, e.g., Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). Nor will we reverse absent a showing of prejudice, as prejudice is not presumed. *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999); *Bell, supra*.

Hanlin's argument, boiled down to its essence, is that a statement made by a twelve-year-old girl to Alabama police officers that he raped her was highly prejudicial, considering that the girl was not present in the courtroom and subject to cross-examination and that Hanlin was never charged with that crime in Alabama. He claims that the statement was admitted merely to prove bad character and to bolster the State's case against him. Hence, the testimony was more prejudicial than probative under Arkansas Rules of Evidence 403. He further contends that the statement was hearsay under Arkansas Rules of Evidence 801, because it was an unsworn statement made to Alabama police officers and offered to prove the truth of the matter asserted that he had raped S. M. He adds that S. M.'s hearsay statement does not fall within any hearsay exception.

Hanlin also underscores the fact that the judge reversed himself twice on this matter, knowing full well that admitting S. M.'s statement was reversible error. The judge first ruled that Hanlin opened the door to admitting these statements on cross-examination. Then he sustained defense counsel's objection to any allegations made against Hanlin by S. M. in Alabama. And then later, he ruled that the prosecutor could elicit testimony from Detective Harper, gleaned from the Alabama statement about what S. M. told her mother, because defense counsel opened the door to this cross-examination.

The State relies on our decision in *Harmon v. State, supra*, to support the circuit judge's ruling. In *Harmon*, the circuit judge admitted evidence over the defense counsel's objection that was elicited during the prosecutor's cross-examination of a police investigator about that investigator's affidavit of probable cause used to obtain the arrest warrant. In our review, this court looked at the testimony and trial counsel's colloquy with the judge and determined that the circuit judge did not abuse his discretion in admitting the evidence, because the defendant opened the door to the testimony. We further held that the testimony was not being offered for the truth of the matter asserted but was introduced to show what information the investigator relied on in preparing his affidavit.

The instant case is distinguishable from the *Harmon* case in that here the hearsay statement made by S. M. in Alabama about her rape was offered by the State for the truth of the matter asserted. The *Harmon* case is also distinguishable on the question of when the door is opened for hearsay testimony. In *Harmon,* defense counsel called the police officer who prepared the affidavit of probable cause and specifically asked him about what a witness to the battery had told him, which led to his affidavit. When the prosecutor, on cross-examination, asked that same police officer about other witnesses mentioned in the affidavit and whether they had identified the defendant, defense counsel objected on hearsay grounds. The prosecutor countered that defense counsel had opened the door for inquiry into what all witnesses had told the police officer about the beating. This court affirmed.

The facts of the *Harmon* case are entirely different from the case at hand. Here, defense counsel posed the following question to Detective Harper:

> Just so this is clear for the jury because I got a little confused there and I want to make sure they're not, [S. M.], in Alabama talked

to her mother in December of '98 and told her some things. Her mother at some point in time and we're not sure when, called her sister, Debbie, in Arkansas. And Debbie in Arkansas at some point in time, apparently, possibly, reported to you, at least around May, told [L. H.]'s mother what she had heard, right?

It is clear to this court that defense counsel's question pertained only to how the information about L. H.'s rape started with S. M., who conveyed it to her mother, who then conveyed it to Debbie String-fellow in Arkansas, who told Kathy Hanlin. That question had absolutely nothing to do with the rape of S. M. in Alabama but only had to do with the rape of L. H. Accordingly, we fail to see how defense counsel opened the door to what S. M. told Alabama authorities about her own rape.[2]

 We hold that the circuit judge abused his discretion in permitting the prosecutor to inquire into a statement received by Detective Harper relating to S. M.'s rape in Alabama. Not only was the testimony double or even triple hearsay, but the effect of it was to label Hanlin as a person of bad character who had engaged in similar activity previously. Bad character evidence is generally inadmissable unless it fits within some recognized exception. *See* Ark. R. Evid. 404; *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804 (1954).

 We are, of course, aware of the pedophile exception to Arkansas Rules of Evidence 404(b) and have summarized that exception as follows:

We have further stated that testimony is admissible pursuant to Rule 404(b) if it is independently relevant to the main issue—relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal or a bad person. In recognizing the so-called pedophile exception to Rule

---

[2] The dissent claims that this opinion does not explain away a colloquy between defense counsel and Detective Harper concerning S. M. The dissent is incorrect about that colloquy. It clearly refers to Hanlin's admission to S. M. that he had had sexual intercourse with L. H., which S. M. relayed to her mother, Maggie McDaniel. There is no reference in the colloquy to Hanlin's sexual intercourse with S. M. Indeed, the next question asked the detective by defense counsel was: "And then her mother indicates that she immediately called her friend, Debbie, here in Arkansas when she found out from her daughter." All of this pertains to how the word got back to the Hanlins that Paul Hanlin had raped L. H.

404(b), this court has approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Mosley v. State, supra,* citing *Free v. State,* 293 Ark. 65, 732 S.W.2d 452 (1987). The rationale for recognizing this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Greenlee v. State,* 318 Ark. 191, 884 S.W.2d 947 (1994).

*Berger v. State,* 343 Ark. 413, 419, 36 S.W.3d 286, 290 (2001).

The problem with this court's application of the pedophile exception, *sua sponte,* is that it was not raised by the State before the circuit judge or in this appeal. Thus, Hanlin has not had an opportunity to address it or raise any defense to it. Though this court will go, on occasion, to the record to affirm for a different reason, typically this is done when that alternative reason was raised by a party and has been developed at the circuit court level. *See, e.g., Johnson v. State,* 343 Ark. 343, 37 S.W.3d 191 (2001); *Heagerty v. State,* 335 Ark. 520, 983 S.W.2d 908 (1998). We have also affirmed for a different reason when the documentary evidence in the record clearly gave us a basis for doing so (*State of Washington v. Thompson,* 339 Ark. 417, 6 S.W.3d 82 (1999)), or when a statute, not argued by either party, is used by this court to affirm the trial court's determination (*Robinson v. State,* 274 Ark. 312, 624 S.W.2d 435 (1981)). This court has been resolute in stating that we will not make a party's argument for that party or raise an issue, *sua sponte,* unless it involves the trial court's jurisdiction. *See, e.g., Ilo v. State,* 350 Ark. 138, 85 S.W.3d 542 (2002). Moreover, we will not consider an argument unless it has been properly developed. *See Haire v. State,* 340 Ark. 11, 8 S.W.3d 468 (2000). Though the *Ilo* and *Haire* opinions address the development of an issue by the defendant, we believe the same rationale should apply to the State. In short, under these circumstances, for this court to raise a new theory or ground for affirmance on our own motion such as the pedophile exception would deprive Hanlin of his right to be heard on the issue. This we will not do.

Our decision not to raise the pedophile exception, *sua sponte,* is bolstered by the fact that we have before us no direct proof establishing that the rape of S. M. occurred in Alabama. In cases where this court has applied the pedophile exception, the other victims typically testified at trial about the defendant's

actions, or there was other direct proof of those offenses. *See, e.g., Spencer v. State*, 348 Ark. 230, 72 S.W.3d 461 (2002); *Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998); *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996); *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987). But here, all that was presented at trial was the unsworn statement of S. M. taken by Alabama authorities and relayed to Detective Harper, which is triple hearsay. The Alabama statement is not even part of the record in this case but was simply conveyed to the jury through the testimony of Detective Harper. Sufficient proof of the rape of S. M. was, therefore, lacking.

### III. Rape-Shield Law

Though we reverse and remand for further proceedings because of the prejudice caused by the statements about the Alabama rape, we feel constrained to address the rape-shield issue. We do so, because the same issue may be presented on retrial.

After the State's case, Hanlin sought to introduce evidence that L. H. had been sexually abused in 1995 in Texas and that the 1995 abuse caused the damaged hymen. The circuit judge denied the oral motion to allow this evidence following L. H.'s testimony about her virginity. The judge noted that defense counsel had not followed the rape-shield procedures required by § 16-42-101 in that he had failed to make a rape-shield motion in writing and had not had a rape-shield hearing.

Hanlin urges that the circuit judge committed prejudicial error by denying him the right to recall L. H.'s parents for the purpose of questioning them on whether L. H. was sexually abused in Texas in 1995. He further argues that the circuit judge abused his discretion by allowing the prosecutor to open the door and offer L. H.'s testimony of her virginal status but then by denying the defense the opportunity to rebut that testimony. According to Hanlin, the situation was made even worse because of the linkage between L. H.'s virgin testimony and Dr. Jones's medical history about L. H.'s damaged hymen.

Though we confess to having some question about whether the prosecutor in fact did open the door to proof regarding L. H.'s prior sexual history, *see Marcum v. State*, 299 Ark. 30, 771 S.W.2d 250 (1989), we will not address this issue.

Our rape-shield law clearly provides that a "written motion" must be filed by the defendant with the court at any time prior to the time that the defense rests. *See* Ark. Code Ann.

§ 16-42-101(c)(1) (Repl. 1999). This was not done. Hanlin argues that he was placed in an untenable position and was not able to file a *written* motion because the trial was well underway. We have no doubt that it would have been somewhat difficult to file a written motion. Nonetheless, that is a mandatory requirement of the statute, and Hanlin was required to comply. We hold that the circuit court did not abuse its discretion in denying Hanlin's motion to introduce proof of the 1995 sexual abuse due to his noncompliance with our rape-shield law.

Reversed and remanded.

DICKEY, C.J., CORBIN and HANNAH, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. I must dissent from the majority opinion reversing Appellant's conviction on the basis that the trial court erred in admitting hearsay testimony. While I agree that the testimony elicited during the examination of Detective Harper was hearsay, I believe that the Appellant opened the door to this testimony through his repeated references to the statements made by Maggie McDaniel and her daughter, S.M., to Alabama authorities. The majority, however, sidesteps this issue by illustrating only one of the references to those statements. A review of the record reveals that Appellant went beyond mere questions about how the information regarding the rape of L.H. was made known to Kathy Hanlin. In fact, after Appellant had already been warned that he was opening the door to this testimony, he specifically asked Detective Harper questions about the alleged sexual incidents between Appellant and S.M., as illustrated by the following colloquy:

> Q. Isn't it true that the information from Alabama is that [S.M.] told Maggie McDaniel that Paul Hanlin had confessed to her in — made this statement to her in — on Christmas Eve of 1998?
>
> A. I don't see that in this statement. It says the first time anything happened was on Christmas Eve of 1998.
>
> Q. Christmas Eve, 1998. And then she told her mother about something that happened on New Years Eve, 1998, correct?
>
> A. Yes.
>
> Q. All right. And then she indicates and then she indicates she told her mother that evening or the next day, correct?

 A. Yeah, I think so.

 This line of questioning was centered on S.M.'s statements that she was raped by Appellant first on Christmas Eve of 1998, and again, on New Year's Eve of 1998. It was only after this line of questioning occurred that the trial court allowed the State to ask about the specific events of those two days.

 The State argues on appeal that it had the right to elicit this hearsay testimony, in order to put S.M.'s and Maggie's statements into context. In fact, a similar issue was addressed in a concurring opinion in *Gordon v. State*, 326 Ark. 90, 931 S.W.2d 91 (1996), which involved a discussion regarding the rule that once a party has opened the door to inadmissable evidence, the opposing party can do likewise. Relying in part on the treatise, *Jones on Evidence*, the concurrence stated:

> Evidence that is irrelevant or otherwise inadmissible, if offered by a party in the first instance, may become properly admissible to rebut or explain evidence offered by another party.

> 2 Clifford S. Fishman, *Jones on Evidence Civil and Criminal*, § 11:34, at 352 (7th Ed. 1994). This is known as the rule of verbal completeness. *Id.* at § 11:35; p. 355. The treatise goes on to state that while one state (Ohio) would not permit this,

> [t]he better view . . . is that the "rule of completeness" permits introduction of otherwise inadmissible evidence for the limited purposes of explaining or putting other, already admitted evidence, into context, *or avoiding misleading the jury*.

*Id.* at 96, 931 S.W.2d at 98 (citing *Jones on Evidence* at § 11:39, p. 370) (Brown, J., concurring).

 This rule of verbal completeness supports the State's contention that it had the right to pursue questions about S.M.'s statements, because Appellant had been picking and choosing parts of the statements to use to question Detective Harper. The State had the right to clarify for the jury what S.M. told her mother had occurred on Christmas Eve and New Year's Eve. The colloquy between Appellant's counsel and Detective Harper could have left a mistaken impression about what occurred, particularly on New Year's Eve. This court has recognized that where defense counsel opens the door to hearsay testimony, fairness dictates that the prosecutor be allowed to explore the area of inquiry to clarify any

confusion or misapprehension that may have lingered in the jury's minds. *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994).

Finally, even if I agreed with the majority that the trial court committed error in allowing this hearsay testimony to be admitted at trial, I believe such error would be harmless and does not warrant reversal of Appellant's conviction. It is axiomatic that the testimony of the rape victim satisfies the substantial-evidence requirement in a rape case. *Clem v. State*, 351 Ark. 112, 90 S.W.3d 428 (2002); *Prater v. State*, 307 Ark. 180, 820 S.W.2d 429 (1991). Here, L.H. gave specific and detailed testimony regarding the rape. In addition, the State introduced medical evidence that was consistent with sexual abuse. Thus, the hearsay evidence was merely cumulative. Appellant has in no way demonstrated how he was prejudiced by its admission, other than the fact that he was convicted of the rape. Where there was sufficient evidence, without the hearsay testimony, supporting Appellant's conviction, any error from the admission of that hearsay testimony was harmless.

A similar result was reached in *Gage v. State*, 295 Ark. 337, 748 S.W.2d 351 (1988), where this court held that even an error of constitutional proportions will not require reversal if it is harmless beyond a reasonable doubt. *See also Thomas v. State*, 289 Ark. 72, 709 S.W.2d 83 (1986). In the *Gage* case, this court determined that the appellant had not demonstrated that prejudice resulted from the error in the admission of testimony because of the overwhelming nature of the other evidence against him. *Id.* (citing *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 108 S.Ct. 202 (1987); *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985)).

Based on the foregoing reasons, I respectfully dissent.

DICKEY, C.J., and HANNAH, J., join in this dissent.