2011 Ark. App. 314

**Curtis Demond HARLMO, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–785.**

Court of Appeals of Arkansas.

April 27, 2011.

Joseph Paul Mazzanti, Lake Village, for appellant.

Dustin McDaniel, Atty. Gen., Valerie Glover Fortner, Little Rock, for appellee.

DOUG MARTIN, Judge.

A Desha County jury found appellant Curtis Demond Harlmo guilty of raping his seven-year-old daughter, C.H., and he was sentenced to thirty-three years' imprisonment. Appellant raises three points on appeal: (1) the evidence was insufficient to support his rape conviction; (2) the trial court erred in denying his motion in limine to exclude hearsay testimony offered by a forensics nurse; and (3) the trial court erred in denying his motion in limine to prohibit introduction of a drawing created by C.H. We affirm appellant's conviction.

At trial, Deana Strolh with the Arkansas State Police testified that she received a hotline tip regarding the abuse of C.H. and initiated an investigation within twenty-four hours. Strolh interviewed C.H. at the Children's Protection Center in Little Rock on or about July 1, 2009. Strolh testified that C.H. drew a picture while waiting for the interviewer to return to the room and that the drawing was not made at anyone's behest. The drawing was later introduced into evidence over appellant's objection during C.H.'s testimony.

Doris Hill, another investigator with the Arkansas State Police, testified that she made repeated attempts to contact C.H.'s mother in order to arrange to have C.H. examined for signs of sexual abuse. Hill eventually contacted C.H.'s mother and conducted a second interview with C.H. on July 28, 2009, at the Children's Advocacy Center in Pine Bluff.

Carla Thomas, a registered nurse employed at the Children's Advocacy Center, testified that, in the course of her job as a "forensics nurse," she notes a child's height and weight, does a basic physical examination, and asks the reason that the child is being examined. Thomas testified that, in the course of her examination, she gathers a statement from the victim to determine what areas of her body were violated. Thomas testified that the statement "tells me when to treat, how to treat, and if they need to come back for more curative reasons." Thomas also testified that she routinely tests for sexually trans-

mitted diseases. Thomas testified that, based on the findings of her examination and what C.H. told her, she referred C.H. to counseling, which she deemed "medically necessary."

Thomas testified that she examined C.H. on July 28, 2009. Thomas testified that C.H.'s vaginal area was cleft at twelve o'clock and that C.H. had no hymenal rim at six o'clock. According to Thomas, such trauma was not typical for a seven-year-old child, unless the child has been sexually assaulted. Thomas further testified that C.H. had white hypertrophic scarring in the anal area, which she indicated on her notes was "highly suspicious." Thomas explained ⌊3that, if C.H. had been seen within seventy-two hours of the abuse, she would expect to see "some redness and bruising, some scarring, and possibly some bleeding" but that C.H. told her the abuse had occurred months earlier during spring break, so the trauma was already healed.

The trial court permitted Thomas to testify regarding hearsay relayed to her by C.H. during the examination, so long as Thomas did not in any manner identify the perpetrator. Thomas testified that C.H. told her that the perpetrator put a towel over her legs and put his "private part" into her "private part" and that the perpetrator had done so more than ten times. Thomas stated that C.H. also told her the perpetrator "put his private part in [her] butt." Thomas further testified that C.H. told her that "white stuff" came out of the perpetrator's "front private."

C.H. was eight years old at the time of trial. C.H. testified as to what was depicted in the drawing she created during the initial interview. C.H. indicated that she was not wearing any clothes in the drawing. C.H. identified her "daddy" on the right side of the drawing and testified that he was standing with his pants down and "putting his private part in my butt."

C.H. testified that she did not remember whether appellant did anything to her "front private part" but that she remembered appellant doing something to her "back private part," which she said made her sad.

C.H. further testified that her mother worked at night and that, although she stayed with a babysitter much of the time, she sometimes stayed with appellant at his trailer. C.H. testified that appellant gave her baths in the same room as that depicted in her drawing. ⌊4According to C.H., appellant put soap and water from a jug on a towel and washed her standing up on the floor. She stated that, while this was happening to her, her brothers and sisters were in the front room watching television or playing with toys. C.H. testified that none of the other people she stayed with did what she had described and that appellant is the only one who ever did such things to her.

Davisha Harlmo, C.H.'s mother, testified that she is married to appellant and that the couple has five children, ranging in age from two to eight years old. Mrs. Harlmo testified that she and appellant were separated from January 2009 to July 2009. Mrs. Harlmo testified that she left appellant due to his infidelity and that she was angry over that and what he had done to her child. Mrs. Harlmo testified, however, that she did not tell C.H. to "make up these stories." Mrs. Harlmo first testified that appellant "barely kept [the children]" but later testified that C.H. stayed with appellant a couple of times and stayed overnight many times. Mrs. Harlmo testified that, although C.H. had been referred for counseling, she did not take C.H. for counseling because "she's already messed up enough."

Appellant took the stand and testified that he did not have any contact with C.H. from October 2008 until March 2009 be-

cause he was incarcerated. Appellant testified that he did have contact with C.H. from March 11, 2009, until June 30, 2009, when he took clothes over to the babysitter's house and when C.H. stayed with him during the last week of June. Appellant testified that, when C.H. stayed the night, she actually stayed with his grandmother because he did not have running water at his trailer. Appellant testified that, although he did not spend a lot of time with his daughters at night, he did during the daytime. Appellant testified that he believed C.H. was abused by somebody but that he was disgusted when he heard C.H.'s testimony and believed she was "coached." Appellant testified, "I feel that I'm being a scapegoat."

## Sufficiency of the Evidence

Appellant moved for a directed verdict on the grounds that there was no evidence of penetration, an element of rape, other than C.H.'s testimony. The trial court denied appellant's motion. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Terry v. State*, 366 Ark. 441, 236 S.W.3d 495 (2006). When reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). We will affirm a judgment of conviction if substantial evidence exists to support it. *Id.* Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* The testimony of a rape victim, standing alone, constitutes sufficient evidence to support a conviction. *Id.* Credibility of witnesses is a matter for the finder of fact to evaluate. *Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994). A fact-finder is not

required to believe the defendant's version of events because he is the person most interested in the outcome of the trial. *Springston v. State*, 61 Ark.App. 36, 962 S.W.2d 836 (1998).

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person who is less than fourteen years of age. Ark.Code Ann. § 5–14–103(a)(3)(A) (Supp.2009). "Sexual intercourse" means penetration, however slight, of the labia majora by a penis. Ark.Code Ann. § 5–14–101(11) (Supp. 2009). "Deviate sexual activity" is defined as "any act of sexual gratification involving the penetration, however slight, of the anus or mouth of a person by the penis of another person." Ark.Code Ann. § 5–14–101(1)(A) (Supp.2009).

On appeal to this court, appellant contends that, while in rape cases, the evidence is sufficient if the victim gives "a full and detailed accounting of the defendant's actions," citing *Martin v. State*, 354 Ark. 289, 119 S.W.3d 504 (2003), C.H. did not provide adequate details about what allegedly happened to her. Appellant argues that C.H.'s testimony revealed no evidence that he engaged in sexual intercourse with her because she testified that she did not remember his doing anything to her "front private part." Appellant argues that, although C.H. testified that he "put his private part in [her] butt," the statute requires proof of penetration by a penis and it is not clear what C.H. meant by "private part." Appellant thus urges this court to disregard C.H.'s testimony.

To the extent appellant's argument is preserved for appeal, C.H.'s testimony is sufficient to support appellant's conviction for rape, which includes sexual intercourse *or* deviate sexual activity. A rape victim's uncorroborated testimony describing penetration may constitute sub-

stantial evidence to sustain a conviction of rape, even when the victim is a child. *Elliott v. State,* 2010 Ark. App. 809, 379 S.W.3d 101. Reasonable jurors could conclude that C.H. was referring to appellant's penis when she called it his "private part." C.H.'s testimony that appellant "put his private part in [her] butt" was sufficient to sustain appellant's conviction for rape. The victim is not required to use the correct terms for the body parts if she uses her own terms or shows an understanding of what and where the body parts being described are located. *McGalliard v. State,* 306 Ark. 181, 813 S.W.2d 768 (1991). Thomas testified that C.H. described "white stuff" that came from appellant's "front private," which clearly indicates that C.H. has seen appellant's penis. Further, during her testimony, C.H. acknowledged a distinction between "front private parts" and "back private parts." Thus, the jury could have reasonably concluded that C.H. sufficiently demonstrated an understanding of anatomy.

Aside from C.H.'s unequivocal statements concerning what appellant did to her, which is sufficient to sustain his conviction for rape, Thomas's testimony corroborated C.H.'s testimony in that she found that the injuries to C.H.'s anus and hymen were consistent with penetration. Appellant contends that Thomas testified only that there was a "high suspicion" of abuse in the anal area and that, if C.H. had been assaulted more than ten times by a grown man, common sense dictates that an examination would reveal more than just a "high suspicion." We disagree. Thomas clearly testified that C.H.'s injuries were healed by the time she examined the child. Accordingly, substantial evidence supports the jury's verdict.

*Evidentiary Rulings*

Appellant argues that the trial court erred in denying his motions in limine.

Trial courts are accorded wide discretion in evidentiary rulings. *Lewis v. State,* 2009 Ark. App. 504, 323 S.W.3d 640. The decision to admit or exclude evidence is within the sound discretion of the trial court, and we will not reverse a trial court's decision regarding the admission of evidence absent a manifest abuse of discretion. *Pugh v. State,* 351 Ark. 5, 89 S.W.3d 909 (2002). Moreover, we will not reverse absent a showing of prejudice. *Id.*

■ First, appellant argues that the trial court erred in allowing Thomas to testify to hearsay by C.H. Arkansas Rule of Evidence 803(4) provides an exception to the rule against hearsay for statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensation, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment. Ark. R. Evid. 803(4).

The trial court permitted Thomas to testify to what C.H. told her about her injuries but prohibited Thomas from testifying about C.H.'s identification of appellant as the perpetrator. The Arkansas Supreme Court has expressly held that the medical-treatment exception to the hearsay rule permits hearsay identifying the perpetrator in the special case of a child-abuse victim *where the abuser is a member of the child's immediate household* and the statement is made in the course of a medical examination for the purpose of diagnosis and treatment. *Elliott, supra,* citing *Hawkins v. State,* 348 Ark. 384, 72 S.W.3d 493 (2002) (emphasis added). Presumably, the trial court limited Thomas's testimony to hearsay concerning C.H.'s injuries because appellant was not an immediate member of C.H.'s household given that appellant and Mrs. Harlmo were separated during the relevant time period.

Appellant maintains that C.H.'s statements do not fall within Rule 803(4)'s exception to the rule against hearsay because the only reason C.H. met with Thomas was in furtherance of a criminal investigation and not for medical treatment or diagnosis. We disagree. Thomas testified that C.H.'s statements told her "when to treat, how to treat, and if they need to come back for more curative reasons." Thomas stated that a victim's statements also direct her to which areas of the victim's body were violated. Thomas also tested C.H. for sexually transmitted diseases and recommended that C.H. undergo counseling, which relates to diagnosis and treatment. C.H.'s hearsay statements about how the injury occurred were reasonably pertinent to Thomas's treatment and were substantiated by Thomas's finding of hypertrophic scarring in C.H.'s anal area. The trial court did not abuse its discretion in permitting Thomas to testify as to what C.H. told her because it fell within Rule 803(4)'s exception to the rule against hearsay.

■ Moreover, C.H. testified at trial and was subject to cross-examination. Thus, appellant had the opportunity to question C.H. regarding statements she made to Thomas. The danger of the admission of hearsay statements without the opportunity to question the reliability of the assertion is alleviated by the opportunity to cross-examine the declarant. *Duvall v. State,* 41 Ark.App. 148, 852 S.W.2d 144 (1993) (citing *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Appellant has not demonstrated any resulting prejudice from the trial court's ruling.

■ Appellant also moved in limine seeking to prohibit introduction of C.H.'s drawing. Appellant argued that the drawing was cumulative and irrelevant and, in any event, should be excluded by Ark. R. Evid. 403, which provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See Williamson v. State,* 2011 Ark. App. 73, 381 S.W.3d 134.

■ The trial judge ruled that C.H.'s drawing was admissible because it could help the jury fully understand C.H.'s testimony. The trial court essentially likened C.H.'s drawing to a photograph. When photographs are helpful to explain testimony, they are ordinarily admissible. *Barnes v. State,* 346 Ark. 91, 55 S.W.3d 271 (2001). The mere fact that a photograph is inflammatory or cumulative is not, standing alone, sufficient reason to exclude it. *Id.* Even the most gruesome photographs may be admissible if they assist the trier of fact by shedding light on some issue, proving a necessary element of the case, enabling a witness to testify more effectively, corroborating testimony, or enabling jurors to better understand the testimony. *Id.*

■ C.H. courageously took the stand to testify against her own father, and, in doing so, C.H. explained what was depicted by her drawing. Significantly, C.H. was only eight years old at the time of trial. The youth and timidity of the witness are important factors mitigating against a finding of abuse of discretion in such situations. *See Elliott, supra* (holding there was no abuse of discretion when trial court suspended nine-year-old victim's testimony and recalled her later for cross-examination). The drawing at issue not only enabled the jury to more fully understand C.H.'s testimony but also allowed C.H. to testify more effectively. Even if the drawing was erroneously admitted, which we hold it was not, the drawing was merely cumulative to C.H.'s testimony, which was far more damning. The trial court did not abuse its considerable discretion in admitting C.H.'s drawing into

evidence, and there was no resulting prejudice to appellant.

For the reasons stated herein, we affirm.

PITTMAN and ABRAMSON, JJ., agree.