Anthony Lamar ABERNATHY *v.* STATE of Arkansas

CR 95-966                                                    925 S.W.2d 380

Supreme Court of Arkansas
Opinion delivered June 17, 1996

*William R. Simpson, Jr.*, Public Defender, by: *Julia B. Jackson*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. Appellant Anthony Lamar Abernathy was convicted by jury of the first-degree murder of his girlfriend, seventeen-year-old Kendra Broadway, and sentenced to life imprisonment. On appeal, he asserts that the trial court abused its discretion in admitting testimony of prior bad acts. We affirm.

The State's evidence against the appellant included the following. On the evening of January 28, 1994, and into the early morning hours of January 29, 1994, appellant was drinking at a friend's house in Little Rock when he noticed he was missing $80.00. Angrily suspecting that his girlfriend Kendra had taken the money, he took a cab to his duplex at 125 College Park Circle in North

Little Rock, where Kendra was staying. According to appellant's statement to police, he thought about shooting her during the taxi ride home, but decided not to do so.

Upon arrival at the duplex at approximately 3:00 a.m., appellant confronted Kendra with the allegations of theft. When she refused to admit that she had stolen the $80.00, appellant beat her with his fists and kicked her with his steel-toe boots. Sherrie Pitts, who lived on the other side of the duplex, was watching television when she heard fighting, yelling, and what she described as "licks" or continuous hitting lasting approximately thirty minutes. She further recalled hearing the appellant repeat, "Bitch, don't you know I will kill you?" to which the victim, who was crying, would reply, "I know. I know." Pitts did not call the police because she did not have a telephone.

Shortly before 7:00 a.m., appellant called 911 from a pay telephone at a nearby intersection. Officer John Murphy of the North Little Rock Police Department was dispatched to the appellant's location. When Murphy arrested him, appellant stated, "I think I killed my girlfriend. I beat her up." Officers then located the victim's body at the duplex. Officer Tom Osborne testified that he found evidence of the appellant's attempt to clean up blood stains, including a water spot on the wall, a mop bucket filled with dirty and bloody water, and bloody rags. According to appellant's statement to Detective Jerry Smith, appellant told the victim he wanted her to die. He told Smith that he was mad at Kendra for stealing his money and admitted to hurting other people with whom he had intimate relationships, stating, "I stay with a person until I end up hurting them."

Dr. Charles Kokes of the State Crime Lab performed the autopsy on the victim and determined that her death was caused by "multiple blunt force injuries to everywhere actually." He estimated that Kendra would have died within two hours of sustaining the injuries. These injuries included a severe wound to the internal nasal structures, a laceration on the left frontal region near the forehead, hemorrhages to the chest and abdominal wall, a large laceration of the liver and right kidney, intestinal bruises, and extensive defensive injuries. According to Dr. Kokes, Kendra could have bled to death from the injury to her internal nasal structures alone. The State introduced photographs depicting the extent of these injuries.

Despite this overwhelming evidence it had against appellant, the State chose to introduce at trial the testimony of four witnesses regarding alleged prior threats and acts of violence by him. The State's theory was that this evidence was necessary to refute the theory that Kendra's killing was an accident. We need only discuss the most egregious of this prior-bad-act evidence, which was offered in the form of testimony of Sam Abernathy, appellant's stepbrother. Sam testified that on January 9, 1993, appellant kicked open the front door of his apartment in the middle of the night and shot him in both thighs, causing a compound fracture in one of his legs necessitating surgery. After Sam, who was unarmed, had fallen to the floor, appellant stood over him and kicked him in the head.

■ The evidentiary rule at issue in this case is A.R.E. 404(b). It reads:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have interpreted this rule as permitting introduction of testimony of other criminal activity if it is "independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court." *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986); *Price* v. *State*, 268 Ark. 535, 597 S.W.2d 598 (1980), *quoting Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). On appeal, we review the trial court's decision on this issue, like other evidentiary determinations, under an abuse-of-discretion standard. *Larimore* v. *State*, 317 Ark. 111, 877 S.W.2d 570 (1994).

■ We stressed the requirement that there be a very high degree of similarity between the charged crime and the prior uncharged act in *Diffee* v. *State*, 319 Ark. 669, 894 S.W.2d 564 (1995). While the issue in that case was identity and the erroneously admitted evidence was offered to show a method of operation, the requirement of similarity in circumstances between the uncharged misconduct and the charged crime also applies when the State

offers the evidence to prove intent or the absence of mistake. Professor Imwinkelried illustrates this point in his treatise:

> Although the courts have been receptive to uncharged misconduct offered to disprove accident, there are restrictions on the introduction of evidence for this purpose. As is generally true under Wigmore's theory, the uncharged act must be similar to the charged act. Wigmore's theory rests on the doctrine of chances, and the evidence does not trigger the doctrine unless the charged and uncharged acts are similar.

> Furthermore, the judge has wide discretion to exclude the evidence under Rule 403. The ideal case for exclusion is one in which (1) the defendant has not affirmatively claimed accident and (2) the nature of the crime is such that accident would not be a plausible defense.

Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 5:10 at 26–27 (1984)(footnotes omitted).

We are mindful of the State's burden to prove that appellant killed Kendra with the purpose of doing so. *See Russey v. State*, 322 Ark. 786, 912 S.W.2d 420 (1995); Ark. Code Ann. § 5-10-112(a)(2)(Repl. 1994). Nevertheless, we can find no logical connection between the uncharged acts perpetrated against appellant's stepbrother and the killing of his girlfriend in the present case. The trial court remarked that appellant's act of kicking his stepbrother in the head is similar to what is alleged in the present incident. Yet to accept that this evidence was relevant would require an inference that if appellant shot his stepbrother in the legs and kicked him in the head afterwards, he therefore had the purpose to kill his girlfriend when he hit and kicked her one year later. Because we conclude that the uncharged act perpetrated against Sam was not sufficiently similar to the charged offense, we hold that the trial court abused its discretion in admitting Sam's testimony at trial.

We must now consider whether this evidence was sufficiently prejudicial to mandate reversal. The universal view is that an error in the admission of uncharged-misconduct evidence is not error per se. Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 9:73 at 124 (1984). For the most part, other courts purport to apply the same harmless-error test to uncharged-misconduct errors as they apply to other trial mistakes. *Id.*, §9:74 at 125. As appellant

did not raise any constitutional objection to the admission of the prior-bad-acts evidence either at trial or on appeal, we need not evaluate the admission of this evidence under the constitutional standard of harmless beyond a reasonable doubt. *See Griffin* v. *State,* 322 Ark. 206, 909 S.W.2d 625 (1995).

■ We have said that when the evidence of guilt is over-whelming and the error is slight, we can declare that the error was harmless and affirm. *Rockett* v. *State,* 318 Ark. 831, 890 S.W.2d 235 (1994); *Greene* v. *State,* 317 Ark. 350, 878 S.W.2d 384 (1994). We find one Eighth Circuit case particularly persuasive. In *U.S.* v. *Johnson,* 879 F.2d 331 (8th Cir. 1989), the defendant was convicted of second-degree murder arising from a stabbing. The defendant stabbed the victim in the chest and face following an argument and claimed self-defense. The trial court admitted evidence of an incident six years earlier in which the defendant had allegedly threatened his aunt with a knife, reasoning that this evidence was relevant to defendant's state of mind or intent. While concluding that the trial court erred in admitting this evidence, as it was remote in time and unconnected to the events surrounding the murder at issue, the *Johnson* court held that the error was harmless in light of the fact that the jury could have inferred from the act itself that Johnson had the requisite mental state to commit the crime charged. The *Johnson* court also noted that the erroneously admit-ted evidence was admitted for limited purposes only.

■ Although Sam's testimony should not have been admit-ted into evidence, in light of the entire record, we determine that its admission constituted harmless error. As in *Johnson,* we think it significant that Sam's testimony, like the testimony of the other three witnesses at issue, was admitted with the following cautionary instruction:

> Members of the jury, you are instructed that evidence of other alleged crimes, wrongs, or acts of Anthony Lamar Abernathy may not be considered by you to prove the char-acter of Anthony Lamar Abernathy in order to show he acted in conformity therewith. This evidence is not to be considered to establish a pertinent trait of character that he may have, nor is it to be considered to show that he acted similarly or accordingly on the day of the incident. This evidence is merely offered as evidence of motive, opportu-nity, intent, preparation, plan, knowledge, absence of mis-

take or accident. Whether any other alleged crimes or acts have been committed is for you to determine.

Moreover, as appellant concedes in his brief, the State had very strong evidence against him, which included: (1) the "earwitness" testimony of Sherrie Pitts, who heard appellant repeatedly tell the victim, "Bitch, don't you know I will kill you?"; (2) appellant's confession, which included admissions that he thought about shooting the victim during the cab ride to the duplex; that he told the victim he wanted her to die; and that he was mad at her for stealing his money and blamed her for their child's death; (3) the lapse in time between the beating at approximately 3:00 a.m. and appellant's call to police at approximately 7:00 a.m. in light of Dr. Kokes testiimony that the victim would have died within two hours after sustaining the injuries; and (4) the evidence discovered at the duplex indicating that appellant tried to clean up the murder scene. Moreover, as in *Johnson*, the jury could have inferred purposeful murder from the act itself, as they heard Dr. Kokes's testimony regarding the nature and number of wounds to the victim's body, and were able to view photographs of these injuries as well. In sum, while we conclude that the State erred in admitting the testimony of Sam Abernathy because it was not sufficiently similar to the circumstances surrounding Kendra's murder, we hold that the admission of this evidence was harmless.

We have reviewed the record pursuant to Ark. Sup. Ct. R. 4-3(h) and have determined that there are no errors with respect to rulings on objections or motions prejudicial to the appellant not discussed above.

Affirmed.

DUDLEY, J., not participating.

BROWN, J., concurs.