2009 Ark. 389

**Eric Wayne KELLEY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1502.**

Supreme Court of Arkansas.

June 25, 2009.

William R. Simpson, Jr., Public Defender, Courtney McLarty, Deputy Public Defender, by: Clint Miller, for appellant.

Dustin McDaniel, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice.

Appellant Eric Wayne Kelley was convicted by a Pulaski County jury of one count of rape of a child less than fourteen years of age and was sentenced to a term of forty-seven years' imprisonment. He now appeals, arguing that the circuit court abused its discretion in admitting certain evidence over his objections in accordance with Arkansas Rule of Evidence 404(b) (2009). Specifically, Kelley challenges the admission of certified documentary proof of his two prior convictions for indecency with a child younger than seventeen and the testimony of a prosecution witness whom Kelley had allegedly raped when the witness was a minor. Because the instant appeal follows an appeal that was decided in this court, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(7) (2009). We affirm Kelley's conviction and sentence.

A recitation of the facts of this case is set forth in *Kelley v. State,* 371 Ark. 599, 269 S.W.3d 326 (2007) (*"Kelley I "*). As indicated therein, the Warrants Division of the Sherwood Police Department received information regarding Kelley from the United States Marshals Service on November 7, 2005. Specifically, the Department learned that Kelley was wanted in Dallas County, Texas, on warrants involving sexual offenses committed against children. Kelley was believed to be living in Sherwood and having sexual relations with

an eleven-to twelve-year-old boy of Middle Eastern descent. An investigation revealed that an individual by the name of Melvin Eugene Kelley resided at 101C Audubon Cove in Sherwood. An Arkansas identification photograph of Melvin Eugene Kelley matched a photograph of Eric Wayne Kelley provided by the Marshals Service.

On November 10, 2005, Officer Kevin Webb of the Sherwood Police Department was patrolling in the area of Kelley's residence and observed a black Nissan Maxima, registered to Melvin Eugene Kelley, leaving the residence. Webb conducted a traffic stop. When Kelley, the driver, could not produce a driver's license, Webb asked for his name and date of birth. Kelley responded that his name was Melvin Kelley and provided a false date of birth. When Webb inquired about the juvenile in the front passenger seat, who matched the description of the boy with whom Kelley was suspected of having sexual relations, Kelley stated that it was his twelve-year-old nephew. After the arrival of other officers on the scene, Kelley was shown the photograph from the Marshals Service and nodded to indicate that it was him. The passenger, twelve-year-old M.M., told Officer William Michaels of the Sherwood Police Department that Kelley was his "friend." Kelley was then arrested.

M.M. was taken to the Sherwood Police Department, where his mother was to pick him up. With his mother's permission, he was interviewed by Sergeant Jeff Hagar. M.M. initially denied that Kelley had ever hurt him but eventually disclosed that Kelley had performed oral sex on him approximately ten to twenty times over the course of the last year. M.M. further stated that Kelley had taken nude photographs of him, which he had seen on Kelley's digital camera and which he believed to have been downloaded onto Kelley's computer. M.M. also disclosed that Kelley had shown him pornographic videos. Based on the information provided by M.M., the officers obtained a nighttime search warrant for Kelley's apartment and executed it at approximately 12:52 a.m. on November 11, 2005. Several pieces of electronic equipment were seized, including various compact discs and digital video discs.

The State filed a felony information charging Kelley with the rape of M.M. and later amended the information to include the charge of engaging children in sexually explicit conduct for use in visual or print medium. *Kelley I*, 371 Ark. at 602, 269 S.W.3d at 328. The State *nolle prossed* the latter charge prior to trial, and Kelley was convicted on the rape charge. *Id.* This court, however, reversed his conviction and remanded for a new trial, holding that the circuit court erred in denying Kelley's motion to suppress the evidence seized from his home during the execution of the nighttime search warrant. *Id.* at 601, 269 S.W.3d at 327. More specifically, we held that the affidavit and warrant lacked any factual basis to support a nighttime search, as they contained only the conclusory statement that the objects to be seized were in danger of imminent removal, without providing any facts or explanation in support of that statement. *Id.* at 608, 269 S.W.3d at 333. Moreover, the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not apply to save the warrant, because the affidavit lacked all indicia of reasonable cause to justify a nighttime search, and the officers therefore should have known that the affidavit was in violation of our rules. *Kelley I*, 371 Ark. at 608, 269 S.W.3d at 333. We further held that, in view of the imposition of a life sentence, the error

could not be deemed harmless. *Id.* The mandate issued on January 17, 2008.

On retrial, Kelley was again convicted of rape and was sentenced, as a habitual offender with two prior felony convictions, to forty-seven years' imprisonment. M.M. testified at trial that he met Kelley, whom he knew as "Gene," in August 2004 at an Office Depot store, where Kelley sold a printer to M.M. and his mother. Kelley provided his telephone number and told M.M. and his mother to call if they encountered any problems with the printer. When M.M. and his mother had trouble installing the printer, Kelley came to the business owned by M.M.'s parents and helped to set it up. M.M. then saw Kelley again "every once in a while" when he went into Office Depot. He later needed a Sherwood address in order to attend school in a particular district and obtained Kelley's permission to use his address. M.M. was picked up and dropped off by the school bus at Kelley's apartment, where he was allowed to wait inside. Kelley and M.M. became friends and would often go out together to watch movies or go bowling. Kelley also bought gifts for M.M., including a cellular telephone and a video-game system. M.M. testified that at some point Kelley began engaging in behavior that made M.M. uncomfortable, which started with Kelley rubbing his thighs. The behavior progressed to Kelley masturbating M.M. and performing oral sex on him. M.M. testified that this happened ten to fifteen times. He further testified that Kelley showed him pornographic videos.

M.M. testified that, following Kelley's arrest, Kelley placed several calls to him on the cellular telephone that Kelley had given him. These calls were made while Kelley was being detained in the Sherwood jail and were recorded. The recordings were admitted into evidence during the State's case-in-chief and were played for the jury. On the recordings, Kelley is heard asking M.M. to bring him a "statement" that he had previously instructed M.M. to write, stating that Kelley had not hurt him. The jury also heard recordings of Kelley's phone calls to his own parents, on which Kelley is heard asking his parents to convince M.M.'s parents to take M.M. out of town on the date of trial so that he would be unavailable to testify.

At trial, the State also introduced the testimony of S.J., a twenty-three-year-old resident of Dallas, Texas, whom Kelley had allegedly raped when S.J. was twelve to fourteen years old. S.J. testified that Kelley was a friend of his family and often took him on outings, including to dinner and the movies. Kelley also bought gifts for S.J., including a cellular telephone. S.J. stated that Kelley would at times take him back to Kelley's house and invite S.J. to masturbate with him, which later progressed to Kelley forcibly masturbating and performing oral sex on S.J. S.J. indicated that this happened "well over fifteen" times. S.J. further testified that Kelley showed pornographic videos to him. S.J. stated that after he ended his contact with Kelley, Kelley "stalked" him and called him over fifty times. Kelley filed a pretrial motion in limine, seeking to exclude S.J.'s testimony pursuant to Arkansas Rule of Evidence 404(b) by arguing that it was too remote in time from the charged conduct and that its probative value was outweighed by the prejudice. This motion was denied.

In addition to S.J.'s testimony, the State also introduced certified documents showing Kelley's two prior convictions for third-degree indecency with a child younger than seventeen years. Specifically, the circuit court admitted copies of the two judgments, both of which were entered on September 29, 1994, in Dallas County,

Texas. Both judgments reflected that Kelley had been convicted by a jury and was sentenced to two years' imprisonment, which was suspended, and two years' probation. The dates of the offenses were June 30, 1993, and September 25, 1993. Neither document provides any other details about the offenses or the victims. During the sentencing phase, the State introduced copies of other certified documents showing that Kelley was on probation for the two prior offenses at the time of his arrest in this case. These documents show that Kelley had previously violated the conditions of his probation by, among other things, having contact with a child under the age of seventeen without the court's permission. However, they provide no details about the circumstances of the two underlying convictions. The circuit court overruled |₇Kelley's Rule 404(b) objection to the admission of this evidence.

From his conviction and sentence, Kelley filed a timely notice of appeal. For his only point of error, he contends that the circuit court abused its discretion in admitting both S.J.'s testimony and the certified documentary proof of his two prior convictions. He maintains that both pieces of evidence were offered by the State only to show his propensity to engage in deviate sexual activity with children. According to Kelley, the State's purpose for introducing the evidence was demonstrated by remarks made during the State's closing argument, particularly, "Eric Kelley is a man that commits sex acts with children. That's who he is. We know that because he has a pattern of doing that. He has two prior convictions of sexual indecency with someone under seventeen. We know that he touched the penis of thirteen year old [S.J.], and that he put his mouth on his penis."

The admission or rejection of evidence under Rule 404(b) is committed to the sound discretion of the circuit court, which this court will not disturb on appeal absent a showing of manifest abuse. *Eubanks v. State*, 2009 Ark. 170, at 3, 303 S.W.3d 450. Rule 404(b) provides as follows, in its entirety:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may; however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2009). Evidence offered under Rule 404(b) must be independently relevant to make the existence of any fact of consequence more or less probable than it would |₈be without the evidence. *Eubanks, supra,* at 3. In other words, the prior bad act must be independently relevant to the main issue, in that it tends to prove some material point rather than merely proving that the defendant is a criminal. *Id.*

This court has long recognized a "pedophile exception" to Rule 404(b). *Id.* We have approved allowing evidence of the defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Id.* at 3–4. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id.* at 4. For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *Id.* We also require that there be an "intimate relation-

ship" between the perpetrator and the victim of the prior act. *Id.*

### S.J.'s Testimony

■ On appeal, Kelley argues that the circuit court abused its discretion in admitting S.J.'s testimony because it was offered by the State solely to prove Kelley's propensity to engage in deviate sexual activity with children. However, in his reply brief, Kelley concedes that S.J.'s testimony was properly admitted pursuant to the pedophile exception to Rule 404(b). We hold that the testimony was properly admitted.

S.J.'s testimony at trial established a sufficient degree of similarity between the acts he alleged and the conduct with which Kelley was charged in the present case. First, both S.J. and M.M. testified to forced masturbation and oral sex. Moreover, both testified that Kelley showed them pornographic videos. This court has suggested that when the sexual acts alleged are identical, there is at least some evidence of a connection between the two allegations demonstrating a depraved sexual instinct. *See, e.g., Lamb v. State,* 372 Ark. 277, 284, 275 S.W.3d 144, 150(2008). In addition, both S.J. and M.M. were twelve-to fourteen-year-old males at the time of the alleged abuse. This court has consistently considered similarities in age and gender of victims to be demonstrative of a depraved sexual instinct, such that the pedophile exception is applicable. *See, e.g., Hamm v. State,* 365 Ark. 647, 653, 232 S.W.3d 463, 469 (2006); *Flanery v. State,* 362 Ark. 311, 315, 208 S.W.3d 187, 190 (2005); *Hernandez v. State,* 331 Ark. 301, 308, 962 S.W.2d 756, 760 (1998).

The trial testimony of S.J. and M.M. also revealed several similarities in Kelley's pattern of alleged abuse. Specifically, both boys testified that Kelley entered their lives as a "friend of the family," eventually becoming close to them individually. He took both boys on outings, such as to eat dinner, see movies, or go bowling, and purchased various gifts for both boys, including cellular telephones. Finally, both S.J. and M.M. testified that, after the termination of their contact with Kelley, he called them numerous times. Such patterns of behavior are probative on the issue of an accused's deviate sexual instincts.

In *Hamm v. State,* for example, the similarities between the two victims' allegations included the following: both children were female, both were nine years old when the abuse began, both met the appellant at church, both were under his supervision at church, both were frequently invited to his home, both were at times sitting on him when the abuse occurred, both reported abuse while home alone with him, and the appellant was not related to either of them. 365 Ark. at 653, 232 S.W.3d at 469. This court held that, in view of these numerous similarities, the circuit court had not abused its discretion in admitting the witness's testimony. *Id.* Similarly, in *Flanery v. State,* we noted that the specific sexual acts complained of were not identical; however, the victim and the witness were similar in age when the abuse happened, both were living in the appellant's home and looked on him as a father figure, and, in both situations, the appellant tried to rationalize his behavior. 362 Ark. at 315, 208 S.W.3d at 190. These similarities were deemed sufficient for the application of the pedophile exception. *Id.* In the instant case, the similarities in Kelley's conduct toward S.J. and M.M., both before and after the abuse, demonstrate his depraved sexual instincts and his proclivity for deviate sexual activity with pubescent boys whom he has befriended.

■ In addition to establishing a sufficient degree of similarity with M.M.'s allegations, S.J.'s testimony also demonstrated

the requisite intimate relationship between him and Kelley. In discussing the type of relationship required for the application of the pedophile exception, this court has stated as follows:

> We have noted that the misnomer, "intimate relationship," does not necessarily require that the child live in the home of the accused. We have defined an "intimate relationship," for lack of a better phrase, as close in friendship or acquaintance, familiar, near, or confidential. We have admitted the testimony of a child living in the same household or staying as an overnight guest in the perpetrator's home. We further have admitted evidence against a perpetrator who babysat a child, or who gained access to the child.

*Parish v. State,* 357 Ark. 260, 270, 163 S.W.3d 843, 849 (2004) (internal citations omitted). This court has furthermore adopted the position that a relationship is sufficient to trigger the pedophile exception if the sexual abuse occurs when the victim is in the perpetrator's care or under his authority. *Berger v. State,* 343 Ark. 413, 420, 36 S.W.3d 286, 290 (2001). Here, S.J., like M.M., was in Kelley's care at the time of the alleged abuse. S.J. testified that the abuse occurred in Kelley's home after Kelley had taken him on outings. He further stated that Kelley's role in his life was that of a "stepfather figure" in the beginning and that he had lived with Kelley at various times. His testimony clearly established that his relationship with Kelley was "close in friendship or acquaintance, familiar, near, or confidential."

*Parish v. State,* 357 Ark. at 270, 163 S.W.3d at 849.

■ For these reasons, we conclude that S.J.'s testimony was properly admitted in accordance with the pedophile exception. In addition, we have noted that if evidence of past behavior is not admissible under the pedophile exception, it is still admissible if it is independently relevant to prove motive, intent, preparation, or plan. *Hamm v. State,* 365 Ark. at 658, 232 S.W.3d at 472. We stated in *Hamm* that testimony about the appellant's prior bad act was "relevant to show the appellant's plan to meet children at church, to invite them back to his home, to keep them returning by offering them treats and entertainment, then to proceed to molest them." *Id.* Likewise, S.J.'s testimony was relevant to show Kelley's plan to meet young boys by befriending their families, to gain the boys' trust and keep them close by taking them on outings and buying them gifts, to show them pornographic videos, and then to force them to engage in masturbation and oral sex. Because S.J.'s testimony was admissible under both the pedophile exception and the rule-based exceptions to Rule 404(b), we hold that the circuit court did not abuse its discretion in allowing it.[1]

*Documents Showing Two Prior Convictions for Indecency With Child Younger Than Seventeen*

■ Kelley also contends that the circuit court abused its discretion in admitting the certified documentary proof of his two prior convictions for indecency with a

---

1. We note Kelley's passing suggestion in his brief that the circuit court's limiting instruction on the Rule 404(b) evidence was insufficient to remove the prejudice. However, the record reflects that Kelley made no objection to the limiting instruction and, in fact, offered it himself. This court held in *Lamb v. State* that an argument regarding the sufficiency of a Rule 404(b) limiting instruction was procedurally barred where the appellant had failed to make an objection at trial. 372 Ark. at 285, 275 S.W.3d at 151. We hold similarly here. It is well settled that arguments not raised at trial cannot be raised for the first time on appeal. *Id.*

child younger than seventeen years. The crux of Kelley's argument is that the State's exhibits lacked any facts or details concerning the victims or circumstances of the two prior offenses, such that the circuit court was unable to perform an analysis of the applicability of the pedophile exception. We agree.

As stated above, this court has consistently held that two requirements must be met for the pedophile exception to apply: there must be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant, and there must be an "intimate relationship" between the defendant and the victim of the prior act. *Eubanks, supra*, at 4. The evidence admitted herein simply fails to satisfy these two basic requirements. The copies of the Texas judgments entered during the State's case-in-chief do not identify the victims, nor do they provide their ages and genders (other than the fact that they were under the age of seventeen). In fact, it is not clear from the judgments whether the two separate convictions involved the same or different victims. The judgments do not indicate whether Kelley was related to the victims or whether they lived in his household. Moreover, they provide no insight into the circumstances of the alleged "indecency." The specific type of abuse alleged is unknown, and there is no comment on Kelley's conduct before or after the alleged abuse. In short, the circuit court could not have evaluated the circumstances and determined whether the two requirements were met by looking at the judgments. The documents admitted during the sentencing phase provided no further aid.

Some insight into the two prior convictions may be gained by reviewing the Texas statute under which Kelley was convicted. While the documents do not state the applicable statutory section, Kelley appears to have been convicted in both cases of indecency with a child in accordance with Section 21.11 of the Texas Penal Code. *See* Tex. Penal Code Ann. § 21.11 (amended 1987).[2] At the time of Kelley's two prior offenses, Section 21.11 provided that a person commits an offense if, with a child younger than seventeen years and not his spouse, whether the child is of the same or opposite sex, he engages in sexual contact with the child, or he exposes his anus or any part of his genitals, knowing the child is present, with intent to arouse or gratify the sexual desire of any person. *See id.* In both of the prior cases, Kelley was convicted of third-degree indecency with a child younger than seventeen, which, according to the statute, involved exposing the anus or any part of the genitals, knowing the child was present, with intent to arouse or gratify the sexual desire of any person. *See id.* § (d).[3]

Even in light of this statute, it was impossible for the circuit court to determine whether the pedophile exception was applicable in this case. The statute reveals only that Kelley's prior victims were younger than seventeen years and not his spouse, and that he exposed his anus or any part of his genitals, knowing they were present, with the intent to arouse or gratify the sexual desire of any person. Thus, it is possible that one or both victims were

---

2. This statute was enacted in 1973 and was amended in 1981, 1987, 1993, 1999, and 2001. The offenses for which Kelley was convicted occurred on June 30, 1993, and September 25, 1993. The 1993 amendments to Section 21.11 became effective on September 1, 1994; therefore, the 1987 version is the applicable version.

3. Conversely, engaging in sexual contact with a child constituted a felony of the second degree. *See id.* § (d).

female and either much younger or much older than M.M. It is also possible that Kelley did not engage in either masturbation or oral sex with either or both victims, only exposing himself while knowing they were present. In accordance with the evidence that was presented to the circuit court, it is conceivable that neither requirement for the application of the pedophile exception was satisfied.

A review of our prior cases interpreting and applying the pedophile exception reveals that we have never allowed evidence similar to what was presented here. In 1994, this court ⌊15⌋upheld a circuit court's ruling allowing the State to introduce, in its case-in-chief on a charge of rape, four prior convictions for sexual offenses. *Greenlee v. State*, 318 Ark. 191, 197, 884 S.W.2d 947, 950 (1994). Two of the convictions were for indecent exposure, while the other two were for lewd molestation. *Id.* However, it was clear that all four of the prior offenses were committed against five-year-old boys who were entrusted to the appellant for babysitting care, as was the victim of the charged rape. *Id.* We allowed the evidence pursuant to the pedophile exception, noting as follows: "Appellant committed the prior offenses against young children, just as he was accused of doing in this case, and in committing the prior offenses, he was successful in luring the children into his lair by baby-sitting, just as he was accused of doing in this case." *Id.* The circuit court in *Greenlee* obviously had access to details about the prior offenses and victims that were evaluated in determining the admissibility of the evidence. Therefore, the facts are distinguishable from those at issue here.

In a similar case, this court affirmed a circuit court's ruling allowing the State to admit proof that the appellant had pleaded guilty to the crime of carnal abuse of his six-year-old stepdaughter eleven years prior to his trial for the rape of his daughter. *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996). While it appears from the opinion that the prior victim did not testify at the appellant's trial, the circuit court was nonetheless able to conduct a pedophile-exception analysis. We held that "[t]he trial court considered both the similarity of the prior conviction to the current charges of rape and incest and the parental relationship ⌊16⌋of Mosley with both of the victims and correctly applied Rule 404(b)." *Id.* at 473, 929 S.W.2d at 695. In other words, because the identity of the prior victim was known, the circuit court was able to determine whether the required intimate relationship was present. Conversely, the circuit court in the instant case was not privy to such information.

In 2004, this court reversed a rape conviction on the basis that the circuit court had abused its discretion in allowing the State to introduce hearsay evidence that the appellant had raped another child. *Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). The evidence consisted of an unsworn written statement made by the child to Alabama authorities, in which she disclosed that the appellant had informed her that he had engaged in sexual intercourse with the victim. *Id.* at 521–23, 157 S.W.3d at 184–86. The child's statement included an allegation that the appellant had raped her as well. *Id.* at 524, 157 S.W.3d at 186. On appeal, the appellant argued that the statement was highly prejudicial, considering the fact that the child was not present in the courtroom and subject to cross-examination and that he was never charged with her rape. *Id.* at 526, 157 S.W.3d at 187. He also maintained that the statement was admitted merely to prove bad character and to bolster the State's case against him. *Id.* He objected in accordance with Arkansas Rules of Evidence 403 and 801, claiming the statement

was unsworn and offered to prove the truth of the matter asserted. *Id.*

This court held that the circuit court had abused its discretion, noting that the statement was double or even triple hearsay and that "the effect of it was to label Hanlin as |₁₇a person of bad character who had engaged in similar activity previously," such that it was inadmissible under Rule 404(b). *Id.* at 528, 157 S.W.3d at 188–89. We took note of the pedophile exception but declined to apply it because the State had not raised it before the circuit court or on appeal. *Id.* at 528–29, 157 S.W.3d at 189. We stated as follows:

> Our decision not to raise the pedophile exception, *sua sponte,* is bolstered by the fact that we have before us no direct proof establishing that the rape of S.M. occurred in Alabama. In cases where this court has applied the pedophile exception, the other victims typically testified at trial about the defendant's actions, or there was other direct proof of those offenses. But here, all that was presented at trial was the unsworn statement of S.M. taken by Alabama authorities and relayed to Detective Harper, which is triple hearsay. The Alabama statement is not even part of the record in this case but was simply conveyed to the jury through the testimony of Detective Harper. Sufficient proof of the rape of S.M. was, therefore, lacking.

*Id.* at 529–30, 157 S.W.3d at 189–90 (internal citations omitted).

As we indicated in *Hanlin,* witness testimony is usually required. This court has permitted evidence under the pedophile exception without witness testimony when the appellant admits to a prior bad act in a custodial statement. For example, in *McDuffy v. State,* 359 Ark. 180, 196 S.W.3d 12 (2004), the appellant was charged with the rape of a thirteen-year-old boy, in the form of both oral and anal sex. During an interview with law enforcement after a waiver of his *Miranda* rights, the appellant confessed to engaging in oral and anal sex with another thirteen-year-old boy. *Id.* at 184, 196 S.W.3d at 14. In its review of potentially prejudicial rulings pursuant to Arkansas Supreme Court Rule 4–3(h), this court considered whether the admission of this statement at the appellant's trial was erroneous. |₁₈*Id.* at 189, 196 S.W.3d at 17. We held that there was no abuse of discretion in accordance with the pedophile exception, concluding that "the court accepted the testimony for the limited purpose of showing proclivity." *Id.*

Similarly, in *Swift v. State,* 363 Ark. 496, 215 S.W.3d 619 (2005), the appellant was charged with the rape of his minor son and challenged the admission of an audiotape of his custodial statement in which he admitted touching the vagina of his niece on three occasions. As in *McDuffy,* however, there was evidence about the prior bad act available to the circuit court:

> She was seven or eight years old at the time of the abuse. On the tape, the appellant stated that he touched K.N.'s vagina with his hand and that K.N. touched his penis and masturbated him to ejaculation. After the third incident, the appellant told K.N. not to tell anyone about the events.

*Id.* at 499, 215 S.W.3d at 621. This court affirmed the circuit court's ruling, noting various similarities between the charged conduct and the admission regarding the niece: both victims shared close familial relationships with the appellant, they were similar in age at the time of the abuse, and, in each instance, the appellant instructed the child not to tell anyone about the abuse. *Id.* at 499–500, 215 S.W.3d at 622. In both *McDuffy* and *Swift,* an analysis of the pedophile-exception requirements was possible, despite the fact that

witness testimony was not offered. No such analysis was possible here, where the circuit court knew nothing about Kelley's prior victims or the circumstances of their abuse.

The State nonetheless maintains that the documentary evidence of Kelley's two prior convictions was admissible under the pedophile exception, citing to this court's opinion in *Flanery v. State, supra.* In *Flanery*, this court affirmed a circuit court's ruling allowing Rule 404(b) evidence pursuant to the pedophile exception despite the fact that the allegations of the victim of the charged rape included oral sex and sexual intercourse, while the Rule 404(b) witness alleged only inappropriate touching. 362 Ark. at 313, 208 S.W.3d at 189. The State contends that this case stands for the proposition that the similarity of the two acts is not controlling and that the relevant inquiry is whether the evidence shows a proclivity for inappropriate conduct with victims sharing a common trait. However, this court's opinion in *Flanery* clearly reiterated the frequently stated rule that, for the pedophile exception to apply, the acts must be sufficiently similar. *Id.* at 314–15, 208 S.W.3d at 189–90. We also set forth a list of the similarities between the charged conduct and the witness's testimony, holding that the admission of the testimony was not an abuse of discretion "[i]n light of the similarities in age and presence of the victims in the same household[.]" *Id.* at 315, 208 S.W.3d at 190.

The State also cites to *Hernandez v. State, supra,* in which, as in *Flanery*, the victim's and witness's allegations differed with respect to the type of abuse. We held that, despite this difference, "the pedophile exception seems especially applicable in view of the evidence that Mr. Hernandez was attracted to the physical characteristics of young girls and the evi-dence that Mr. Hernandez attempted to offer both the victim and the witness gifts in exchange for sexual favors." 331 Ark. at 308, 962 S.W.2d at 760. Other similari-ties were present as well. *Id.* The State seems to suggest that the evidence at is-sue here was admissible because it was helpful in showing that Kelley was attract-ed to the physical characteristics of young boys; however, the fact remains that the age and gender of Kelley's prior victims are unknown. Therefore, the *Hernandez* decision provides no support for the State's position.

Because the documentary evi-dence showing Kelley's two prior convic-tions provides no information that would have allowed the circuit court to conduct a pedophile-exception analysis, we hold that the admission of this evidence was an abuse of discretion. However, we affirm Kelley's conviction and sentence because the error was harmless. We have held that, even when a circuit court errs in admitting evidence, we may declare the error harmless and affirm when the evi-dence of guilt is overwhelming and the error is slight. *Buford v. State,* 368 Ark. 87, 91, 243 S.W.3d 300, 303 (2006). To determine if the error is slight, we can look to see if the defendant was preju-diced. *Id.* This court has consistently held that the uncorroborated testimony of a child-rape victim is sufficient evidence to sustain a conviction. *White v. State,* 367 Ark. 595, 600, 242 S.W.3d 240, 245 (2006). Here, M.M. testified to the rapes. In ad-dition to that evidence, S.J. testified to remarkably similar conduct on the part of Kelley. Moreover, the jury heard record-ings of Kelley's telephone calls made from the jail, in which he is heard attempting to secure M.M.'s unavailability on the date of trial. Kelley's statements during those calls clearly demonstrate his consciousness of guilt. Thus, the evidence of his guilt

was overwhelming. In addition, any risk of prejudice resulting from the admission of the documentary evidence was slight. Kelley did not receive the maximum sentence of life imprisonment, and the evidence of his two prior convictions would have been admitted during the sentencing phase to establish his status as a habitual offender. For these reasons, we declare the error harmless and affirm Kelley's conviction and sentence.[4]

Affirmed.

HANNAH, C.J., dissents.

JIM HANNAH, Chief Justice, dissenting.

Based on the principle of stare decisis, I concur in the decision that S.J.'s testimony was admissible. I also concur with the majority that the circuit court abused its discretion in admitting into evidence two Texas judgments convicting Kelley of "indecency with a child younger then seventeen years of age." However, I respectfully dissent to the majority's conclusion that admission of the two Texas judgments was harmless error.

The majority concludes that Kelley's conviction in the present case may be affirmed because admission of the Texas judgments constituted harmless error, given that the evidence of guilt is overwhelming and the error in admitting the Texas judgments is slight. The majority states that, "[t]o determine if the error is slight, we can look to see if the defendant is prejudiced. This court has consistently

held that the uncorroborated testimony of a child-rape victim is sufficient evidence to sustain a conviction." (Citations omitted.) This analysis, which has been followed by this court in a number of opinions in recent years, is in error.

The majority asserts that because Kelley did not object to admission of the Texas convictions on constitutional grounds, the constitutional standard is inapplicable. The majority cites to *Abernathy v. State,* 325 Ark. 61, 925 S.W.2d 380 (1996), and *Griffin v. State,* 322 Ark. 206, 909 S.W.2d 625 (1995), for this proposition. Both cases hold that where a defendant fails to make a constitutional objection or constitutional argument on appeal, this court need not evaluate the admission of this evidence under the constitutional standard of harmless error beyond a reasonable doubt. *Abernathy,* 325 Ark. at 66, 925 S.W.2d at 382; *Griffin,* 322 Ark. at 221, 909 S.W.2d at 633. Both cases were incorrectly decided.

The Fifth and Sixth Amendments provide the right to a jury trial and verdict based on proof beyond reasonable doubt. *Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Where error is found, harmless-error analysis may be applied by a reviewing court to affirm a criminal case if the sanctity of the jury verdict is preserved by determining beyond a reasonable doubt that the jury verdict was unaffected by the error. *Id.* at 279, 113 S.Ct. 2078. If the reviewing court uses any lesser standard, as is

---

4. We note the dissent's contention that the harmless-error rule applies only where the State can demonstrate beyond a reasonable doubt that the error complained of did not contribute to the verdict. However, the dissent refers to the harmless-error standard for constitutional violations. This court has held that, where an appellant fails to raise any constitutional objection to the admission of prior-bad-acts evidence at trial or on appeal, "we need not evaluate the admission of this evidence under the constitutional standard of harmless beyond a reasonable doubt." *Abernathy v. State,* 325 Ark. 61, 65–66, 925 S.W.2d 380, 382 (1996) (citing *Griffin v. State,* 322 Ark. 206, 909 S.W.2d 625 (1995)). Because Kelley has not raised a constitutional objection to the admission of the documentary evidence, the constitutional standard is inapplicable.

done in the present case, the jury verdict is breached by the court, and the court substitutes its judgment of the facts for that of the jury in concluding that in spite of the error, the State met its burden of proof. The required ₂₃analysis set out in *Sullivan* assures that the defendant is convicted by a jury based on proof beyond a reasonable doubt.

In the present case, the court affirms the decision because, despite the error, there was still substantial evidence to support the jury verdict. However, this fails to show that the jury was unaffected by the error. The court thus makes the factual decision of guilt. For a reviewing court "to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." *Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078.

Application of harmless error has nothing to do with what objection was made. There is no preservation issue in this case. The issue of harmless error is first raised on appeal by the State, or even the reviewing court on its own motion, to affirm the conviction in spite of error. Harmless error in a criminal case by its nature raises a constitutional issue. The issue is whether by admission of evidence in error, a criminal defendant has been deprived of his or her right to a jury trial based on proof beyond a reasonable doubt.

Harmless error is found in two forms. Under the common law, error unaccompanied by prejudice is harmless error that is not subject to reversal. *Clawson v. Rye*, 281 Ark. 8, 11, 661 S.W.2d 354, 356–57 (1983) (quoting *McCoy Farms, Inc. v. J. & M. McKee*, 263 Ark. 20, 27, 563 S.W.2d 409, 413 (1978)). Clearly, Kelley was prejudiced by the admission of the undefined Texas convictions for indecency with a child younger than seventeen. Under the common law, the case would be subject to reversal. However, in *Chapman v. California,* ₂₄386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court declared that reversal in criminal cases is not required where it is shown that, beyond a reasonable doubt, the error did not affect the jury's verdict. The majority's approach in the present case fits neither pattern and fails to comply with requirements under the United States Constitution.

> Harmless-error review looks, we have said, to the basis on which the "jury *actually rested* its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893 [114 L.Ed.2d 432] (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict surely would have been rendered but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

*Sullivan*, 508 U.S. at 279, 113 S.Ct. 2078 (emphasis in original).

There is no showing beyond a reasonable doubt that the admission of the Texas convictions did not contribute to the verdict, and on that basis, harmless error is not available to the court in this case. Therefore, I dissent.